120707USvsWashington.txt

1

1               IN THE UNITED STATES DISTRICT COURT
                FOR THE CENTRAL DISTRICT OF ILLINOIS
2

3

4      UNITED STATES OF AMERICA,          )
                                          )
5                     Plaintiff,          )
                                          )
6            vs.                          )  Case No. 06-10033
                                          )  Peoria, Illinois
7      ADREIN BENNETT, TERRY BENNETT,     )
       NEASHON WASHINGTON and             )
8      KONTYUS ROBINSON,                  )
                                          )
9                     Defendants.         )

10

11

12               TRANSCRIPT OF SENTENCING HEARING PROCEEDINGS
13                          December 17, 2007

14

15

16                              BEFORE:
                    THE HONORABLE MICHAEL M. MIHM,
17                    United States District Judge

18

19

20

21

22

23

24          Jennifer E. Johnson, CSR, RMR, CRR, CBC
       Proceedings recorded by mechanical stenography, transcript
25     produced by computer

                                                              2

1      APPEARANCES:

2

       BRADLEY W. MURPHY, ESQUIRE
3      United States Attorney
       One Technology Plaza, Suite 400
                          Page 1

120707USvsWashington.txt
```
4    Peoria, Illinois  61602
     (309) 671-7050
5        Appeared on Behalf of the Plaintiff.

6

7    JOHN P. LONERGAN, ESQUIRE
     411 Hamilton Boulevard, Suite 1708
     Peoria, Illinois  61602
8    (309) 673-3939
         Appeared on Behalf of the Defendant Adrein Bennett.
9

10   MICHAEL J. PETRO, ESQUIRE
     53 West Jackson Street, Suite 1264
11   Chicago, Illinois  60604
     (312) 913-1111
12       Appeared on Behalf of the Defendant Terry Bennett.

13

14   WILLIAM C. LOEFFEL, ESQUIRE
     Williams, Williams & Loeffel, P.C.
     139 East Washington Street
15   East Peoria, Illinois  61611
     (309) 674-3196
16       Appeared on Behalf of the Defendant
         Neashon Washington.
17

18   JEFFREY L. FLANAGAN, ESQUIRE
     411 Hamilton Boulevard, Suite 1708
19   Peoria, Illinois  61602
     (309) 671-9701
20       Appeared on Behalf of the Defendant Kontyus Robinson.

21

22

23

24

25
```

                                                            3

```
1            THE COURT:  This is Case Number 06-10033.  We

2    have Defendant Neashon Washington here with Attorney

3    William Loeffel, Defendant Adrein Bennett here with

4    Attorney John Lonergan, Defendant Terry Bennett here with

5    Attorney Mike Petro, Defendant Kontyus Robinson here with

6    his attorney, Jeff Flanagan.

7            Matter is set today for hearing on post-trial

8    motions in the case of Terry Bennett and, if those are
```

                         Page 2

```
 9    denied, then sentencing on everybody.  I think -- my
10    understanding is that Terry Bennett is the only defendant
11    at this point that has a post-trial motion pending.
12    Mr. Petro, you filed that some time ago.
13              The government hasn't filed a formal response
14    to that.  Is that correct, Mr. Murphy?
15              MR. MURPHY:  That's correct, Judge.
16              THE COURT:  Do you have any oral comments to
17    make?
18              MR. MURPHY:  Judge, I did review it this
19    morning, and the only thing that I don't have a
20    recollection -- since I was co-counsel with Mr. Chambers,
21    I'm going on a vague memory I have with regard to the
22    Batson claim that was raised, Judge.  It's my recollection
23    that an individual juror had a relative with a prior
24    conviction, or a prior conviction, one or other, that we
25    felt was very close to this particular case and that was
```

4

```
 1    our race-neutral reason, is what my recollection is,
 2    Judge.  The other things are all very clear in the record
 3    here.
 4              THE COURT:  Hold on just a minute.
 5              Mr. Petro, do you wish to be heard orally on
 6    any of these points?
 7              MR. PETRO:  No, sir.  I would rest on my
 8    filing with the Court.
 9              THE COURT:  Okay.  Do you have any -- do you
10    agree with Mr. Murphy's characterization as to the stated
11    reason for the excuse of the juror?
12              MR. PETRO:  That does jibe with my memory,
13    Judge.
```

120707USvsWashington.txt

14          THE COURT:  All right.  It also coincides with

15  mine.  Well, the motion is very good in capturing all of

16  the legal issues involved in the case, but I don't believe

17  any of those issues have any merit, and so the motion for

18  judgment of acquittal and new trial is denied.

19          As a result of the findings of the jury --

20  juries in these two trials, the Court directed the

21  probation officer to prepare written presentence reports.

22  That was done, and copies were made available to everyone,

23  including the defendants.

24          By the way, one other thing I recall looking

25  over this morning -- hold on just a second.  I think I got

                                                             5

1   a letter -- did get a letter in the mail from

2   Mr. Washington.  Mr. Loeffel?

3          MR. LOEFFEL:  He did write the Court, Your

4   Honor.

5          THE COURT:  Mr. Washington, do you wish to be

6   heard by the Court on that at this time?  You wrote me a

7   letter in the mail, correct, complaining about your

8   attorney.  Have you talked with him since then?

9          DEFENDANT WASHINGTON:  Right.  Yes.  Yes, I

10  did.

11          THE COURT:  Is there any portion of that

12  letter that you sent me that remains unresolved?

13          DEFENDANT WASHINGTON:  Yes.

14          THE COURT:  Okay.  What's that?

15          DEFENDANT WASHINGTON:  Just a minute, Your

16  Honor.

17          I withdraw it.

18          THE COURT:  Okay.  All right.  Thank you.  I

120707USvsWashington.txt

19    understand that -- from Probation that there's been a
20    recalculation of some of the weights.
21         But let me begin by asking, just to start
22    with, Mr. Lonergan, you're representing Adrein Bennett.
23    Have you had a reasonable opportunity to read the report
24    and review it with your client?
25         MR. LONERGAN:  Yes, Your Honor, I have.

                                                    6

1         THE COURT:  Based on your reading and review
2    as I understand it, as of right now, anyway, you've had
3    filed certain objections to the report, looks like three
4    -- three objections.
5         MR. LONERGAN:  That's correct, Your Honor.
6         THE COURT:  What is the status of those?
7         MR. LONERGAN:  I believe that we are standing
8    by all of our objections, Judge.  We don't anticipate
9    presenting evidence, just argument on those.
10         THE COURT:  All right.  And as I understand
11    it, one objection has to do with the characterization of
12    your client as a leader of the Bigelow Boys.
13         Second one has to do with guideline
14    calculations.  You're claiming he's only responsible for
15    47.7 grams.
16         MR. LONERGAN:  Yes, Your Honor.
17         THE COURT:  The third one objects to the
18    enhancement for the firearm.
19         MR. LONERGAN:  That's correct, Judge.
20         THE COURT:  Okay.  Neashon Washington.
21    Mr. Loeffel, have you had a reasonable opportunity to read
22    that report and review it with your client?
23         MR. LOEFFEL:  Yes, I have, Your Honor.

120707USvsWashington.txt
24          THE COURT:  As of now, you show -- I think I
25     may be missing a page here.  Go from objection number

                                                  7

1      three to objection number ten.  Am I missing some pages,
2      or are they misnumbered?  How many objections did you
3      have?
4          MR. LOEFFEL:  I had these specific --
5          THE COURT:  I only have five objections here,
6      but it goes one, two, three, ten and eleven.
7          MR. LOEFFEL:  Yes, Your Honor, but I believe I
8      only had five objections.  Then I also filed a
9      supplemental commentary which simply seeks to add some
10     material to the paragraphs of the presentence
11     investigation regarding my client's medical health.
12         THE COURT:  Concerning that point, adding new
13     information about his medical records, does the government
14     have any objection to that?
15         MR. MURPHY:  No.
16         THE COURT:  Okay.  So, that will be allowed.
17     And then concerning the five objections, are you still
18     pursuing each of those?
19         MR. LOEFFEL:  Your Honor, we're going to stand
20     by our first objection regarding the mandatory minimum
21     sentence.
22         THE COURT:  Okay.
23         MR. LOEFFEL:  With respect to the second
24     objection, the relevant conduct, I understand that we are
25     not going to have witnesses testify today regarding

                                                  8

1      relevant conduct so I believe that that point would be
2      moot.
                        Page 6

120707USvsWashington.txt

```
 3                With respect to paragraph three which would go
 4      towards credible threats of violence, I believe there will
 5      be no testimony from a Jennifer Parcel.  I believe that
 6      that would be moot.
 7                THE COURT:  What do you mean, moot?
 8                MR. LOEFFEL:  Well, that would be that --
 9                THE COURT:  You're saying because she won't
10      testify that the -- this is no longer in the report?  I'm
11      not sure that's correct.
12                MR. LOEFFEL:  If it is in the report, then I
13      would wish to retain it then, to present argument.
14                THE COURT:  Okay.
15                MR. LOEFFEL:  With respect to what is labeled
16      as number ten, that goes to weight, and I believe -- or I
17      hope that the government and myself are in agreement as to
18      the total weight attributable to the conspiracy as being
19      46.5 grams.  The difference was because if you add
20      Count 2, which was found to be at trial not to be crack
21      cocaine, you get this additional 1.2 which is where the
22      47.7 comes from.
23                THE COURT:  You're saying that you and the
24      government agree that it is 46 -- 46 point what?
25                MR. LOEFFEL:  46.5, Your Honor.
```

                                                                9

```
 1                THE COURT:  Is that correct?
 2                MR. MURPHY:  Judge, in the counts in the
 3      indictment, Counsel is correct, there would be 46.5 grams
 4      of crack cocaine.  There was an additional buy that was a
 5      count in the indictment that turned out to be cocaine.
 6      However, it was sold as crack cocaine, which is why I
 7      understand the probation office counted it as part of a
```
                                Page 7

120707USvsWashington.txt

8    conspiracy, because it had been sold and represented to be

9    crack cocaine.  So, I don't know where that leaves us.

10        What I want to add is that I don't believe

11    that even if the Court finds it's 46.5 of crack cocaine

12    for conspiracy, I don't think that's the total weight of

13    the conspiracy.  There were other witnesses that were not

14    included in that particular total.

15        THE COURT:  All right.  What about the -- what

16    about the last?

17        MR. LOEFFEL:  The last one, Your Honor, I

18    think would go towards argument of counsel and the

19    recollection of the Court as to the evidence presented at

20    trial.

21        THE COURT:  Okay.  So, basically everything is

22    still in, from what you're saying?

23        MR. LOEFFEL:  Yes.

24        THE COURT:  All right.  Mr. Robinson.

25    Mr. Flanagan, did you have a reasonable opportunity to

                                                              10

1    read the report and review it with your client?

2        MR. FLANAGAN:  Yes, Your Honor.

3        THE COURT:  As I understand it, you have

4    identified one objection having to do with the firearm?

5        MR. FLANAGAN:  That's correct, Your Honor.

6        THE COURT:  Are you pursuing that?

7        MR. FLANAGAN:  I'm going to pursue it as is

8    written.  I will have no formal evidence at hearing or any

9    additional argument, Judge.

10        THE COURT:  Okay.  Thank you.

11        And, Mr. Petro, concerning Terry Bennett, did

12    you have a reasonable opportunity to read the probation

120707USvsWashington.txt

13    report and review it with your client?

14              MR. PETRO:  I did, sir.

15              THE COURT:  It looks like you've identified

16    one objection having to do with the weight, the relevant

17    conduct.

18              MR. PETRO:  That's correct, Judge, and I

19    believe the government and I are agreeing at this point

20    that the relative conduct attributable to Terry Bennett is

21    between 50 and 150 grams.  Based on that, Judge, in the

22    supplemental report that's been filed, in paragraph 43

23    that would make Mr. Bennett's base offense level a 30, and

24    it would also change the total offense level after

25    enhancements in number 52 to a 30.

                                                              11

1              THE COURT:  So, go from 34 down to a 30?

2              MR. PETRO:  Correct, Judge.  That also

3    encompasses the drop in the sentencing guidelines for

4    crack cocaine.

5              THE COURT:  And then -- excuse me just a

6    moment.  That has -- shows a new range of what?  168 to

7    210?

8              MR. PETRO:  I'm sorry.

9              THE COURT:  Or am I wrong?

10              MR. PETRO:  Judge, the way the presentence

11    report is calculated, my client is 168 to 210 for a level

12    30.  The probation and I -- officers and I agreed with

13    respect to the computation of my client's criminal

14    history, he did have a number of driving on suspended

15    license cases --

16              THE COURT:  Right.

17              MR. PETRO:  -- that were consolidated with a

                              Page 9

120707USvsWashington.txt

18      60-day sentence for the purpose of sentencing.  I went

19      through it with the probation officer, and I find his

20      approach --

21              THE COURT:   Drop the criminal history category

22      from 6 to 4?

23              MR. PETRO:   Correct, sir.

24              THE COURT:   Okay.   Then what would that range

25      be?  Is that --

                                                        12

1               MR. PETRO:   That range, sir, would be -- if I

2       can get this far enough away from my eyes -- 136 to 168.

3               THE COURT:   Okay.  All right.  Thank you.

4               MR. PETRO:   Then the only other thing, Judge,

5       I wanted to call to the Court's attention, my client did

6       receive eight years in state court, and I would ask the

7       Court to consider that at sentencing.

8               THE COURT:   Certainly.  Okay.  Well, I guess

9       the next question is, does either side have any evidence

10      to present on any of these issues?

11              MR. MURPHY:   No, Judge, we do not.  If I could

12      indicate, I think there's probably Mr. Robinson and

13      Mr. Terry Bennett who present very little argument over

14      anything but the sentence itself.

15              THE COURT:   I think maybe I'll go ahead with

16      those, and then we can use whatever time is necessary for

17      the other two.

18              MR. MURPHY:   Fine.

19              THE COURT:   Mr. -- does it matter, Mr. Petro

20      and Mr. Flanagan, which of you goes first?

21              MR. PETRO:   No, sir.

22              MR. FLANAGAN:   No, Your Honor.

120707USvsWashington.txt

23            THE COURT:  Mr. Petro, you've got a longer

24    drive so let's start with you.

25            MR. PETRO:  Judge, I did file a written

                                                          13

1    memorandum in this particular case.  The only thing that I

2    think is left open for consideration is that 5G1.3 seems

3    to indicate you can consider, in giving a lower sentence

4    to Mr. Bennett, the fact that he received eight years for

5    conduct that was used as relevant conduct in this

6    particular case.  In light of the fact that he received

7    eight years in state court, his range is 136 to 168 right

8    now, Judge.  I would just ask that since there's a

9    ten-year mandatory minimum you sentence him to 120 months

10   in prison.

11            THE COURT:  All right.  Okay.  I appreciate

12   that.  Let me -- hold on.  On the objection that Terry

13   Bennett filed, I can show an agreement that -- between the

14   parties that the weight was between 50 and 150 grams.

15            Does the government have any objection to the

16   probation officer's recommendation that -- first of all,

17   belief that perhaps the criminal history category is

18   overstated and should drop down to four?

19            MR. MURPHY:  Judge, I didn't understand it

20   really was a recommendation.  I think it was pointed out

21   as a potential --

22            THE COURT:  Whatever.  Do you have any

23   objection to it?

24            MR. MURPHY:  Judge, I think there's some

25   wiggle room.  I don't know that two full levels is

                                                          14

120707USvsWashington.txt

1    appropriate, but, yes, I think you have some discretion

2    there.

3              THE COURT:  All right.  So, the weight I'll

4    show as being worked out.  And I, frankly, completely

5    agree about the criminal history category.  Seems to me

6    it's clearly overstated.  So, I will be dropping the

7    criminal history category down to four.

8              Mr. Bennett -- Terry Bennett, have you had a

9    reasonable opportunity to read this report and review it

10   with your attorney?

11             DEFENDANT TERRY BENNETT:  Yes, sir.

12             THE COURT:  Based on your reading and review,

13   other than the matters that we've already resolved, is

14   there anything else in the report you feel is inaccurate

15   or incomplete that you wish to challenge?

16             DEFENDANT TERRY BENNETT:  No, sir.

17             THE COURT:  You understand you have the

18   opportunity to present evidence in mitigation here this

19   morning; you also have the right to make a statement to

20   the Court on your own behalf before I impose sentence.

21             Do you understand?

22             DEFENDANT TERRY BENNETT:  Yes, sir.

23             THE COURT:  Does the government have anything

24   concerning Terry Bennett's presentence report that you

25   feel is inaccurate?

                                                        15

1              MR. MURPHY:  No, Judge, not at all.

2              THE COURT:  Okay.  And do you have --

3    Mr. Petro, do you have any additional evidence?

4              MR. PETRO:  No, sir.

5              THE COURT:  All right.

                          Page 12

120707USvsWashington.txt

6              MR. PETRO:  The only thing is I don't know if
7     you want a recommendation as to an institution.  My client
8     would like to serve his time at Pekin.
9              The only other thing, Judge, is I would ask
10    for a finding of indigency for Mr. Bennett for the
11    purposes of appeal on today's date.
12             THE COURT:  All right.  So, we end up with a
13    total offense level of 30.  Is that correct?
14             PROBATION:  Yes, Your Honor.
15             THE COURT:  Criminal history category of four.
16    The custody range is what?
17             PROBATION:  135 to 168.
18             THE COURT:  135 or 136?
19             PROBATION:  135.
20             THE COURT:  135 to 168.  Fine range is what?
21             PROBATION:  15,000 to 6 million.
22             THE COURT:  I'm sorry.  15,000 to what?
23             PROBATION:  6 million.
24             THE COURT:  All right.  The supervised release
25    range?

                                                          16

1              PROBATION:  Five years to life.
2              THE COURT:  Okay.  And the special assessment
3     is what, $300?
4              PROBATION:  Yes, Your Honor.
5              THE COURT:  Okay.  Counsel agree that is the
6     correct sentencing profile?
7              MR. PETRO:  Yes, sir.
8              THE COURT:  Mr. Murphy, in view of the state
9     court sentence, what is your recommendation for the
10    sentence that I should impose on him today?  I could be

                        Page 13

120707USvsWashington.txt

11    wrong, but I don't see any reference to that in the

12    presentence report.

13              PROBATION:   Your Honor, paragraph 91

14    references this issue, on page 20 of the report.

15              THE COURT:   Paragraph 91.

16              PROBATION:   Under the guidelines, he should

17    receive a credit of six months and ten days for the state

18    sentence.

19              THE COURT:   Six months, ten days.  All right.

20              MR. PETRO:   May I inquire?  That is based,

21    though, on the fact that -- the time that he has already

22    served.  Is that correct?

23              PROBATION:   That is the basic amount of time

24    that he went in -- that time he was serving and the time

25    he went into the custody of U.S. marshals.

                                                    17


1               THE COURT:   I guess my question is, if the

2     sentence that he's serving in the state prison is for the

3     same conduct -- same relevant conduct that he's been

4     convicted of here, shouldn't we -- be careful we don't

5     sentence him to double time, in effect.

6               MR. MURPHY:   Yes.  And I think that's --

7     that's the situation that's provided -- I think it's 5G1.3

8     of the guidelines in which the Court has discretion to

9     make it a -- I think you call it partially consecutive,

10    partially concurrent type sentence.  And that was the

11    recommendation I was going to make to the Court, is that,

12    Judge, we will be satisfied with anywhere within that

13    range of 135 to 168.

14              THE COURT:   Do you agree there is a mandatory

15    minimum sentence of 120?

                          Page 14

120707USvsWashington.txt

16              MR. MURPHY:  Yes.  That is based, of course,

17      on the jury's finding.

18              THE COURT:  Right, I understand that.  With

19      regard to that 120, that is not something that would be --

20      that would be played out part consecutively and part

21      concurrent, would it?

22              MR. MURPHY:  I believe that's also correct,

23      that the portion that the -- the portion of the sentence

24      that you would make to be partially concurrent would be

25      whatever above the 120.

                                                        18

1               THE COURT:  That's my understanding.  Is that

2       yours, Mr. Petro?

3               MR. PETRO:  I'm sorry?

4               THE COURT:  Say it again.  My understanding is

5       that the 120 is not something that the Court would

6       consider or can consider imposing as partly concurrent and

7       partly consecutive to the state court sentence.  That's,

8       that's the federal mandatory minimum, 120.

9               MR. PETRO:  120 months, Judge.  I would just

10      ask that -- I don't think Mr. Bennett will get full credit

11      from the Bureau of Prisons if you impose some type of

12      partially concurrent or partially consecutive sentence.  I

13      would just ask that it run concurrently.

14              PROBATION:  Your Honor, just to be clear, the

15      defendant was not -- did not receive any criminal history

16      points for that state conviction.  Therefore, it's not

17      counted against him in any way.

18              THE COURT:  It was not counted against him for

19      criminal history points, but he's actually serving time

20      for that conduct, correct?

                        Page 15

120707USvsWashington.txt

21          PROBATION:   Right.  But it doesn't account

22     into his guideline range.

23          THE COURT:  I understand.  All right.

24          Mr. Murphy, do you have any further statement

25     to make regarding this sentence?

                                                    19

1          MR. MURPHY:  No, I don't, Judge.  We're very

2     trusting of the Court's discretion and that range of 135

3     to 168.

4          THE COURT:  All right.  Mr. Petro, do you have

5     anything else to add concerning what you feel his sentence

6     should be?

7          MR. PETRO:  No, Judge.  I would ask that it be

8     120 months and that the state court time run concurrent

9     with the federal court time.  And that's based on the fact

10     that he will, for all practical purposes, on an eight-year

11     sentence in state court, serve approximately three years,

12     maybe a little bit more than three years.  And because of

13     the mandatory minimum --

14          THE COURT:  Well, I want to be clear on this.

15     My understanding was -- I had the impression that I could

16     not say that the 120 was to be served either partly or

17     wholly concurrently with the state court sentence.  That's

18     my understanding.  Maybe I'm wrong.  I'd like to know what

19     Counsel thinks about that.

20          MR. MURPHY:  I agree with the Court.

21          THE COURT:  I think the 120 months is just

22     going to end up being consecutive to the state court

23     sentence.

24          If you have some reason to think that's

25     incorrect, I would be very happy to be educated.

                    Page 16

120707USvsWashington.txt

20

1           MR. PETRO:  The only thing I will say, Judge,
2     is that the last overt act in the indictment that was
3     charged against Terry Bennett was the state court case.
4     All the conduct in the federal court case attributed to my
5     client came before that point in time.  If the Court
6     recalls, my client was pulled over for a traffic stop at
7     which point he was charged in state court and federal
8     court for this particular offense.  The federal charges
9     were dismissed, and then he went to state court.
10          But I think that the fair -- a fair reading
11    would be since all the overt acts charged against Terry
12    Bennett in the indictment, I think the Court can run them
13    concurrently.
14          THE COURT:  Mr. Murphy?
15          MR. MURPHY:  Judge, I don't understand that to
16    be true, that you can run the sentence concurrently with
17    the pending state sentence.  To make it just concurrent
18    alone, I don't think you're authorized to do that.
19          THE COURT:  All right.  Mr. Bennett, sir, is
20    there anything you'd like to say to the Court on your own
21    behalf before I impose sentence?
22          DEFENDANT TERRY BENNETT:  No, sir.
23          THE COURT:  Okay.  All right.  The Court
24    adopts the factual findings and guideline application as
25    contained in the presentence report.

21

1           First of all, concerning this question of
2     concurrent versus consecutive, I do not believe that I'm
3     dealing with this mandatory minimum sentence.  I do not
4     believe that it's a matter of having it run concurrently

120707USvsWashington.txt

5     with the state court sentence.  I believe it would be
6     consecutive.
7              Secondly, considering all of the sentencing
8     factors that are set out in 3553 -- that is, first of all,
9     nature and circumstances of the offense, very serious drug
10    conspiracy, characteristics of the defendant, both the
11    criminal history category of four, need for the sentence
12    imposed to reflect the seriousness of the offense and
13    promote respect for the law, provide just punishment, also
14    to provide adequate deterrence to criminal conduct and
15    protect the public from further crimes by the defendant,
16    and also considering the guideline range itself, taking
17    all these things into account and also taking into account
18    the state court sentence, the Court finds that the
19    sentence in this case that is sufficient but not greater
20    than necessary to meet all these sentencing factors is at
21    the mandatory minimum sentence of 120 months.
22             So, pursuant to the Sentencing Reform Act, the
23    defendant is hereby committed to the custody of Bureau of
24    Prisons for a period of 120 months.  That would be on each
25    of the three counts, to run concurrently with each other.

                                                      22

1     No fine is recommended.  Following release from custody,
2     you shall serve a five-year term of supervised release on
3     Count 1, three-year term of supervised release on Counts 2
4     and 3, all concurrent with each other.  Within 72 hours of
5     your release from custody, you shall report in person to
6     the probation office in the district to which you are
7     released.  While on supervision, you shall not commit
8     another federal, state or local crime.  You shall not
9     possess a controlled substance.  You shall submit to one
                        Page 18

120707USvsWashington.txt

10    drug test within 15 days of release and two drug tests
11    thereafter as directed.
12            In addition, pursuant to the Justice for All
13    Act, you shall cooperate in the collection of DNA as
14    directed by the probation office or the Bureau of Prisons.
15            In addition to the standard conditions of
16    supervision, you shall abide by the following special
17    conditions:    Number one, you shall refrain from any use of
18    alcohol and shall not purchase, possess, use, distribute
19    or administer any controlled substance or any
20    paraphernalia related to any controlled substance except
21    as prescribed by a physician.  You shall, at the direction
22    of the probation officer, participate in a program for
23    substance abuse treatment, including not more than six
24    tests per month to determine whether you have used
25    controlled substances and/or alcohol.  You shall pay for

                                                              23

1    these services as directed.  If you are unemployed after
2    the 60 days of supervision or if you are unemployed for 30
3    days after termination or layoff from employment, you
4    shall perform at least 60 hours of community service work
5    per week at the direction of the probation office until
6    gainfully employed.  You shall not own, purchase or
7    possess a firearm, ammunition or other dangerous weapon.
8    A special assessment of $300 is imposed and payable
9    immediately.
10            I will recommend that you serve your sentence
11    in a facility as close to your family in Peoria as
12    possible.  I will specifically recommend FCI Pekin.  I
13    will also recommend that you serve your sentence in a
14    facility that will allow you to participate in the

120707USvsWashington.txt

15    residential drug abuse program and maximize your exposure

16    to educational and vocational opportunities.

17         You do, of course, have the right to file a

18    notice of appeal in this case if it is your wish to

19    appeal.  I instruct you that any notice of appeal must be

20    filed with the clerk of the court within ten days of

21    today's date.  As your attorney, Mr. Petro has an absolute

22    responsibility to file that notice for you if that is your

23    wish.

24         And with regard to that, Mr. Petro, I assume

25    you will confer with him, and if he does wish to file a

                                                              24

1    notice of appeal I do -- I think you should file it.

2         MR. PETRO:  No, absolutely, I will file it.  I

3    just ask that a finding of indigency be made for that.

4         THE COURT:  I have never addressed this

5    question with him before.

6         Do you wish me to appoint a lawyer to

7    represent you on appeal in this case, sir?

8         MR. PETRO:  I'm not asking that you appoint a

9    lawyer at this point, Judge.  I can ask the Seventh

10    Circuit to do that.  I'm just asking that you make a

11    finding of indigency for the purpose of filing fees and

12    what have you.

13         THE COURT:  All right.  Well, in order to do

14    that, I have to get certain information from him while

15    he's under oath.

16         So, please raise your right hand and be sworn.

17    (Defendant sworn by the Clerk of the Court.)

18         THE COURT:  Having now been sworn, you

19    understand that your answers to my questions are subject

120707USvsWashington.txt

20      to the penalties of perjury or of giving false statement

21      if you don't answer truthfully?

22                  DEFENDANT TERRY BENNETT:  Yes, sir.

23                  THE COURT:  Bottom line here is I need to know

24      what assets you have.  What assets do you have?  Do you

25      have any bank accounts?

                                                            25

1                   DEFENDANT TERRY BENNETT:  No, sir.

2                   THE COURT:  Do you own any real estate?

3                   DEFENDANT TERRY BENNETT:  No, sir.

4                   THE COURT:  What items of personal property do

5       you own?

6                   DEFENDANT TERRY BENNETT:  Clothes.

7                   THE COURT:  I'm sorry?

8                   DEFENDANT TERRY BENNETT:  Clothes.  I don't

9       know.

10                  THE COURT:  Do you have any expensive jewelry

11      or anything like that?

12                  DEFENDANT TERRY BENNETT:  No, sir.

13                  THE COURT:  Is anyone holding any cash for

14      you?

15                  DEFENDANT TERRY BENNETT:  No, sir.

16                  THE COURT:  Is anyone holding any other assets

17      for you?

18                  DEFENDANT TERRY BENNETT:  No, sir.

19                  THE COURT:  So, you're basically busted?  Is

20      that correct?

21                  DEFENDANT TERRY BENNETT:  Yes, sir.

22                  THE COURT:  All right.  All right.  Then the

23      Court finds that you are indigent for purposes of the

24      filing of appeal.

                        Page 21

120707USvsWashington.txt
```
25              When the issue of representation on appeal
```
                                                                26

```
 1      comes up, then you will take that up with the courthouse.
 2                  MR. PETRO:   Thank you, sir.
 3                  THE COURT:   Anything else?  Mr. Murphy?
 4                  MR. MURPHY:   No, Your Honor.
 5                  MR. PETRO:   Thank you, Judge.
 6                  DEFENDANT TERRY BENNETT:   Thank you, Judge.
 7                  THE COURT:   You're welcome to stay, but you
 8      don't have to.
 9                  Mr. Flanagan, concerning your client, you
10      indicated that you had argument on this objection in
11      regard to paragraph 30.  Do you want to go ahead and make
12      that argument?
13                  MR. FLANAGAN:   Actually, Judge, what I believe
14      I indicated was I have no evidence, and I have no
15      additional argument as to anything in addition to what's
16      contained in the actual objection itself.
17                  THE COURT:   Okay.  Mr. Murphy, what's the
18      government's position on this objection?
19                  MR. MURPHY:   Ours is also presented there at
20      page 22 of the report.  I believe it's necessary --
21                  THE COURT:   Do you mean paragraph 3?  You said
22      page 22.  Oh, I see.
23                  MR. MURPHY:   The addendum is on page 22 I
24      have, Judge.  Our argument is set out there.  I would
25      further point out to the Court that this is certainly moot
```
                                                                27

```
 1      in terms of the defendant's calculations for the sentence
 2      as well.
```

120707USvsWashington.txt
3              THE COURT:  Why is that?

4              MR. MURPHY:  Because of the mandatory minimum

5       that applies here, Judge.

6              THE COURT:  But as I understand it -- yes,

7       Defense Counsel concedes that Defendant is identified as

8       the shooter.  I agree with the government that there's

9       nothing that requires you ever be charged or convicted.

10      It also says neither firearms referenced was ever

11      identified as the firearm used in the alleged shooting.

12             How would the government respond to that?  It

13      says the firearms were concealed and found in a box in a

14      drawer in the bedroom.  It also says there's no proof that

15      he was a resident of the home.  Now --

16             MR. MURPHY:  To apply this, Judge, I don't

17      think we have to show that either one of those two weapons

18      actually was used.  If the Court recalls, there was

19      testimony about this at the trial that occurred.  Now,

20      Mr. Flanagan was not present, but there was a shots-fired

21      call.  The officers went out there.  They were quite

22      familiar with this house because this is the Bigelow

23      house, as I understand, where trafficking was being done.

24      And circumstances of the investigation led to Mr. Robinson

25      being identified, and a search warrant -- or thereafter a
                                                              28

1       search was made of the house, and we found the drugs,

2       small quantity of drugs and those two guns upstairs.

3              Regardless of whether those were the two guns

4       that were used in the shooting, I think you can still

5       apply this particular enhancement.

6              THE COURT:  You're saying that because the

7       guns were found in the house where the drugs were being

                         Page 23

120707USvsWashington.txt

8    sold, whether the guns were actually used in the assault

9    or not is, for the most part, irrelevant?

10              MR. MURPHY:  Yes.

11              THE COURT:  The shooting is what brought --

12    gave the police -- what caused them to come to that

13    location and, and caused them to ultimately find --

14              MR. MURPHY:  That's correct.  I think the

15    Court can apply this, Judge, whether you do it on the

16    basis of him being identified as a shooter or on the basis

17    of those drugs -- those guns being found in the house

18    where the trafficking occurred by these conspirators.

19              THE COURT:  I guess, Mr. Flanagan, that's what

20    I really ask you to respond to because it seems to me that

21    whether or not the government can establish either by this

22    record or otherwise that he was, in fact, the shooter, if

23    the guns were found at that location, I think there is a

24    fairly rich body of evidence or record concerning what was

25    going on in the house.  Proximity to drug conspiracy

                                                      29

1    activity, that seems, to me, arguably the adjustment would

2    apply anyway.

3              MR. FLANAGAN:  Your Honor, I actually agree

4    that the shooting has nothing to do with whether the Court

5    applies the adjustment.  My, my objection in addressing

6    that was in response to the facts that they set forth --

7              THE COURT:  I understand.

8              MR. FLANAGAN:  -- in their original thing.  I

9    think the issue is, is the correlation between the guns

10    being located in the house and the conspiracy.

11              And I did indicate some other things in there

12    that I believe are more relevant with respect to the

                          Page 24

120707USvsWashington.txt

13    testing on the firearm, my client not residing there, I

14    think those are more relevant.   The shooting thing, I

15    agree --

16              THE COURT:   I think the trial record in this

17    case clearly establishes that the government has met its

18    burden of proof which, I would point out, is not proof

19    beyond a reasonable doubt but, rather, a preponderance of

20    the evidence.   And I think that the trial record that

21    exists clearly establishes that it's more likely true than

22    not true that those guns were found there and that they

23    were found in the location and proximity to sustained drug

24    activity, and the defendant had the definite connections

25    to that residence.   So, I'm going to deny that objection.

                                                        30

1              Any other objections to the report?

2              MR. FLANAGAN:   No, Your Honor.

3              THE COURT:   Okay.   Mr. Robinson, have you had

4    a reasonable opportunity to read this report and review it

5    with your attorney?

6              DEFENDANT ROBINSON:   Yes, sir.

7              THE COURT:   Based on your reading and review,

8    other than this item that I've already resolved, is there

9    anything else in the report you feel is inaccurate or

10    incomplete that you wish to challenge?

11              DEFENDANT ROBINSON:   No, sir.

12              THE COURT:   You understand you have the

13    opportunity to present evidence in mitigation here this

14    afternoon.   You also have the right to make a statement to

15    the Court on your own behalf before I impose sentence.   Do

16    you understand?

17              DEFENDANT ROBINSON:   Yes.

120707USvsWashington.txt

18          THE COURT:  Thank you.  Mr. Murphy, is the

19   government aware of anything in the report that is

20   inaccurate?

21          MR. MURPHY:  No, Your Honor.

22          THE COURT:  Okay.  Do you have any additional

23   evidence to present?

24          MR. MURPHY:  I do not, Judge.

25          THE COURT:  Mr. Flanagan, do you have any

                                                    31

1    additional evidence to present?

2           MR. FLANAGAN:  No, Your Honor.

3           THE COURT:  All right, then.  Looks like we

4    ended up with a total offense level of 23, criminal

5    history category of three.  Count 1 is -- the range is 60

6    to 71 months.  Counts 8, 10 and 12, 57 to 71 months.

7    Supervised release on Count 1, at least four years.

8    Counts 8 to 10 and 12, at least three years.  Restitution,

9    I don't believe any specific element of restitution.

10   Total fine range is 10,000 to 6 million.  And there's a

11   special assessment of $500.

12          Counsel agree that is the correct sentencing

13   profile that results from the Court's findings?

14          MR. MURPHY:  Yes, Judge.

15          MR. FLANAGAN:  Yes, Your Honor.

16          THE COURT:  Mr. Murphy, do you have a

17   statement to make regarding sentence?

18          MR. MURPHY:  Judge, I would only say that our

19   recommendation in this instance would be the mandatory

20   minimum of 60, which would be the low end of -- which

21   would become the low end of the range.  And we believe

22   that appropriately reflects his degree of culpability in

120707USvsWashington.txt

23    this conspiracy.

24         THE COURT:  All right.  Thank you.

25         Mr. Flanagan?

                                                 32

1          MR. FLANAGAN:  Your Honor, likewise, I believe

2    that in reviewing the PSR and what's contained in there

3    and the calculation of the sentencing guidelines that the

4    appropriate recommendation here would be the mandatory

5    minimum of 60 months.  I would ask the Court to adopt that

6    recommendation as Mr. Murphy has suggested.  And in

7    addition, I would also ask the Court to consider a

8    recommendation to a facility as close to Peoria as

9    possible, in this case being Pekin.

10         THE COURT:  All right.  You specifically want

11   FCI Pekin?

12         MR. FLANAGAN:  Yes, Your Honor.

13         THE COURT:  All right.  Well, thank you.

14         Mr. Robinson, is there anything you would like

15   to say to the Court on your own behalf before I impose

16   sentence?

17         DEFENDANT ROBINSON:  No, Your Honor.

18         THE COURT:  The Court adopts the factual

19   findings and guideline application as contained in the

20   presentence report.  In looking at the sentencing factors

21   under 3553, again, the nature and circumstances of the

22   offense, the seriousness of the offense, the drug

23   trafficking, your history and characteristics, criminal

24   history category three, all these other factors, that the

25   Court is to impose a sentence to reflect the seriousness

                                                 33

1    of the offense, promote respect for the law, provide just

120707USvsWashington.txt

2    punishment for it, adequate deterrence to criminal conduct

3    and protect the public from further crimes by you and also

4    consider the guidelines themselves, it is my finding that

5    the mandatory minimum sentence is the sentence that is

6    sufficient but not greater than necessary to address those

7    factors.

8              So, pursuant to the Sentencing Reform Act, you

9    are hereby committed to the custody of the Bureau of

10   Prisons for a period of 60 months on Count 1 and 57 months

11   on Counts 8 through 10 and 12, and the terms would run

12   concurrently.

13             The Court finds you're not capable of paying a

14   fine.  And -- let me stop for a moment.  Is that -- on

15   Counts 8 through 10 and 12, does mandatory minimum apply

16   to that?  It doesn't.

17             PROBATION:  Your Honor, there is no mandatory

18   minimum.

19             THE COURT:  That's right.  I'm sorry.  Okay.

20             57 months on Counts 8 through 10 and 12.

21   Terms would run concurrently.  The Court finds you're not

22   capable of paying a fine; no fine is imposed.  Following

23   your release from custody, you shall serve a four-year

24   term of supervision on Count 1 and three-year term for

25   each of Counts 8, 10 and 12.  Those terms will run

                                                        34

1    concurrent with each other.  Within 72 hours of your

2    release from custody, you shall report in person to the

3    probation office in the district to which you are

4    released.  While on supervision, you shall not commit

5    another federal, state or local crime.  You shall not

6    possess a controlled substance.  You shall submit to one

120707USvsWashington.txt

7    drug test within 15 days of release from imprisonment and
8    two drug tests thereafter as directed.  Pursuant to the
9    Justice for All Act, you shall cooperate in the collection
10   of DNA as directed by the probation or Bureau of Prisons.
11        You shall comply with the standard conditions
12   of supervision and the following special conditions.
13   Number one:  You shall refrain from any use of alcohol.
14   You shall not purchase, possess, use, distribute or
15   administer any controlled substance or any paraphernalia
16   related to any controlled substance except as prescribed
17   by a physician.  You shall, at the direction of the
18   probation officer, participate in a program for substance
19   abuse treatment, including not more than six tests per
20   month to determine whether you have used controlled
21   substances and/or alcohol.  You shall pay for these
22   services as directed.
23        Number two:  You shall participate in a
24   program of job training and employment counseling as
25   directed.

35

1         Number three:  You shall not own, purchase or
2    possess a firearm, ammunition or other dangerous weapon.
3    Special assessment of $500 is imposed and payable
4    immediately.
5         I will recommend that you serve your sentence
6    in a minimum security facility as close to your family --
7    I'm sorry.  You want to be at FCI Pekin?
8         DEFENDANT ROBINSON:  Yes, sir.
9         THE COURT:  Well, I will specifically
10   recommend FCI Pekin.  Also, I will recommend that you be
11   allowed to participate in whatever type of drug treatment

120707USvsWashington.txt

12    program or comprehensive drug treatment program can be
13    provided to you and also that you be allowed to maximize
14    your exposure to educational and vocational opportunities.
15           You do, of course, have the right to file a
16    notice of appeal in this case.  If it is your wish to
17    appeal, I instruct you that any notice of appeal must be
18    filed with the clerk of the court within ten days of
19    today's date.  As your attorney, Mr. Flanagan has an
20    absolute responsibility to file that notice for you if
21    that is your wish.  Do you understand?
22           DEFENDANT ROBINSON:  Yes, sir.
23           THE COURT:  Anything else?
24           MR. MURPHY:  No.
25           MR. FLANAGAN:  No, Your Honor.  Thank you.

                                                        36

1            THE COURT:  All right.  Thank you.  Again,
2     you're welcome to stay or leave.  I'll leave that up to
3     the marshals, frankly.  Defendant's Counsel is welcome to
4     stay or leave.
5            Adrein Bennett.  Three objections.  First
6     objection has to do with the characterization of Adrein
7     Bennett as the leader of the Bigelow Boys.  Do you wish to
8     be heard on that?
9            MR. LONERGAN:  That's correct, Judge.
10           THE COURT:  Go ahead.
11           MR. LONERGAN:  Your Honor, since there's no
12    evidence being presented today, we're left with what was
13    presented at trial.  There's been a four-point adjustment
14    made by the probation office classifying my client as
15    organizer or leader.  However, my -- again, relying on my
16    own recollection from the trial and the research in the
                         Page 30

120707USvsWashington.txt

17     case, on review of discovery, with what was at trial,
18     essentially Mr. Bennett was contacted by the agent.   He
19     delivered drugs or, on occasion, someone else would
20     deliver for him or be in the car with him.   And our
21     position is very simple, Judge.   That is not sufficient to
22     prove leader/organizer.
23              Now, there have been conclusions drawn by the
24     probation officer in the report, simply making statements
25     that he is the undisputed leader, I believe, was a quote

                                                         37

1      from the first version of the presentence report.
2      However, the evidence at trial doesn't support that
3      characterization as undisputed leader or leader and
4      organizer for purposes of 3B1.1.   Therefore, we're asking
5      the Court not to include any leadership enhancement or, at
6      a minimum, the two-point enhancement because he simply --
7      there's simply not sufficient evidence to support that
8      four-point increase.   And again, we have to rely on
9      recollection of the evidence at trial.
10              THE COURT:   I understand.
11              Mr. Murphy?
12              MR. MURPHY:   Judge, I would submit that with
13     regard to the evidence at trial, no one bought out of
14     either of these houses that we had evidence about or from
15     any of these individuals without first having Adrein
16     Bennett's telephone number.
17              Secondly, on occasion even when Mr. Bennett
18     was called, others would show up at his direction and make
19     the distributions, doing his bidding.
20              Thirdly -- and there was brief testimony about
21     this -- that when anyone felt like they had been shorted,
                        Page 31

120707USvsWashington.txt

22    anybody who bought out of the conspiracy, they didn't go

23    back to the person they bought from; they called Adrein

24    Bennett again.  I think that shows that from beginning to

25    end in the transaction, Adrein Bennett is the go-to person

                                                          38

1    here.  Adrein Bennett was the director of this play on

2    Bigelow Street.  And Adrein Bennett, whether -- whether

3    he, you know, has the name/title of the leader of the

4    Bigelow Boys is not what we're arguing here.  I think

5    we're arguing whether this enhancement is properly

6    applied.  I submit from the evidence it clearly is.

7             THE COURT:  All right.  Thank you.  I actually

8    think that the probation officer's description in

9    paragraph 43 is pretty accurate, and I think it is

10   supported substantially by, by evidence presented during

11   the trial -- that is, that Adrein Bennett was the leader

12   of the Bigelow Boys.  That it's clear from listening to

13   the evidence unfold at trial that he was the person who

14   made the decisions.  He was the person who gave

15   directions.  As it says in paragraph 43, Defendant had

16   direct control over Neashon Washington, Terry Bennett,

17   Douglas Sherman and Mr. Robinson and directed these

18   individuals to deliver crack cocaine for him.  I think the

19   record clearly establishes that.  It says these

20   individuals would call the defendant to obtain permission

21   to add crack cocaine.  I specifically recall that

22   happening on at least a couple of occasions.  And as

23   Mr. Murphy suggests, if there was a complaint, the person

24   you complained to was Adrein.

25             In watching this case unfold during the trial,

                                                          39

120707USvsWashington.txt

1    there just simply wasn't any question in my mind that he

2    was, in fact, the head of this group.  So, it's not a

3    frivolous objection, but I think it's without merit.  I

4    think the record more than adequately supports the

5    adjustment for the offense by preponderance of the

6    evidence.  So the objection is denied.

7         Second objection.  The second objection has to

8    do with weight.  What's your argument?

9         MR. LONERGAN:  Judge, very briefly.  The

10   evidence at trial from the buys, even if we go with the

11   state's -- or the government's theory that even including

12   the powder cocaine that was sold as crack gets us to 47.7

13   grams.  In addition -- in order to get over that amount,

14   get over the 50, get into the 50 to 150 range, the Court

15   would have to make a finding that -- I believe the only

16   other witness who testified in our trial was Doug Sherman,

17   find his testimony credible and reliable and add

18   insufficient weight to get to that range.  We stand by our

19   objection.

20        THE COURT:  If I recall correctly,

21   Mr. Sherman's testimony about that at -- to the extent

22   believed by the Court would add a substantial amount of

23   weight to 47 grams, correct?  Clearly over 50 grams.  I

24   don't think there's any doubt about that.

25        MR. LONERGAN:  That is the Court's discretion

                                        40

1    to make that finding.

2         THE COURT:  No, I understand that, but I'm

3    saying --

4         MR. LONERGAN:  If the Court believes him, yes,

                        Page 33

120707USvsWashington.txt

5          that's correct.

6                    THE COURT:   Okay.   All right.

7                    MR. MURPHY:   Judge, I would like to point out

8          one other thing, and that is that at the second trial,

9          Mr. Bennett -- an additional witness did testify.   Her

10         name was Delaney.   She added twice as much weight as did

11         Mr. Sherman.

12                    THE COURT:   That was in Terry Bennett's trial.

13                    MR. MURPHY:   That's correct.   But that was

14         weight of the conspiracy.

15                    THE COURT:   No, I understand that, but what

16         bothers me about that is that these two defendants --

17         these three defendants, actually, they didn't have an

18         opportunity to cross-examine her.   They weren't involved

19         in the second trial.

20                    MR. MURPHY:   Well, that's correct, but she

21         certainly was cross-examined.

22                    THE COURT:   Well, she was cross-examined, but

23         she wasn't cross-examined by Mr. Lonergan, was she?

24                    MR. MURPHY:   I don't understand that what you

25         can make your findings from requires the cross-examination

                                                             41

1          by Mr. Lonergan, Your Honor, so that's why I thought it

2          should be added to the record.

3                    THE COURT:   I think it's kind of a moot point

4          because I did believe Mr. Sherman's testimony.   In fact, I

5          actually thought he was quite credible as a witness.   So

6          -- and, yes, I did believe the other -- the woman's

7          testimony, but I think for purposes of my findings here, I

8          think that's moot because the amount that Sherman

9          testified about clearly takes it over 50 grams.   So, I'm

                              Page 34

120707USvsWashington.txt
10    going to deny that objection.

11         Third objection has to do with the firearms

12    enhancement.

13         MR. LONERGAN:   That's correct, Your Honor.

14         THE COURT:   Go ahead with that.

15         MR. LONERGAN:   For purposes of the record, I

16    won't refer too heavily to Mr. Robinson's sentencing a few

17    minutes ago, but understanding the Court has made that

18    finding, evidence at our trial was regarding the incident

19    of the shooting and the police's subsequent investigation

20    of the house.  They found two guns and one very small rock

21    of crack cocaine.  There's no -- there's, again,

22    conclusionary statements made by the probation office that

23    that is -- that Bigelow address is my client's address,

24    but I don't believe that --

25         THE COURT:   As I recall correctly, and I -- I

                                                              42

1    don't want to mischaracterize this, but my recollection

2    from the trial record is that that particular address was

3    kind of like the -- not sure "headquarters" is quite the

4    right word, but that was the central location for

5    activities of people involved in the drug conspiracy.

6    That's my recollection.

7         MR. LONERGAN:   Again, Judge, I did not sit

8    through Terry Bennett's second trial in this case, and my

9    understanding is there was probably more evidence at that

10    trial than there was in ours.

11         But again, I think that that is a -- our

12    position is that is a conclusionary statement, not, in our

13    opinion, supported by the evidence submitted at our trial

14    which is that there was a shooting there, that there were

                            Page 35

120707USvsWashington.txt

15   the guns found in the subsequent investigation and one

16   personal -- what I would describe as a personal-use amount

17   of crack cocaine.

18          THE COURT:  You state further in your

19   objection there's no evidence that -- well, you say there

20   was no evidence that Defendant was aware of the firearms

21   as they were concealed.

22          MR. LONERGAN:  Basically, yes.

23          THE COURT:  What's the government's response

24   to that?  Argument?

25          MR. MURPHY:  Well, again, that's a true

                                                        43

1    statement, but I don't think that adds to the mix here.

2    We have two weapons found in this crack house where we

3    have repeated testimony that -- not only from the

4    undercover agent who was buying repeatedly, but from two

5    other individuals who were buying repeatedly from this

6    particular conspiracy that trafficking was a regular

7    course of business there.  These guns were found upstairs,

8    as I recall, not too far away from where the plate that

9    had the rock of crack cocaine was located.

10          One of the witnesses, Mr. Sherman, indicated

11   that that type of a plate is what was used to crack up

12   much larger amounts -- or cook up much larger amounts of

13   the crack cocaine.  So, I think the guns are clearly tied

14   here to the trafficking that was going on at that house in

15   a conspiracy that was led by Mr. Bennett.

16          THE COURT:  Well, the trial record clearly

17   establishes that the house was used as a -- as a place

18   where drug transactions commonly occurred involving

19   conspiracy and involving Adrein Bennett.  I think it is

120707USvsWashington.txt

20    correct that the evidence does not specifically -- the
21    trial record does not specifically identify knowledge by
22    Adrein Bennett that those certain firearms were at a
23    certain place at a certain time, but I don't think that is
24    required.  So, I believe the record is more than adequate
25    here for a finding that this adjustment should apply.  So,

                                                              44

1    the objection is denied.
2              Do you have any other -- do you have any other
3    objections?
4              MR. LONERGAN:  Judge, I think that addresses
5    all our objections.  I would confer with Mr. Murphy for
6    just a moment, please.
7              THE COURT:  Yes.  It's my understanding you
8    had some -- I thought perhaps Probation mentioned
9    something that you had some agreement on the amount -- the
10   weight?
11             MR. MURPHY:  Judge, I don't know whether it's
12   fair to say it was an agreement.  We certainly weren't
13   disagreeing that the appropriate range was supposed to be
14   50 to 150.  I was asking the Court to make that finding in
15   my pleading, Judge, for purposes of the mandatory minimum.
16             THE COURT:  What's your position on that?
17             MR. LONERGAN:  Our position, Judge, is I
18   believe the statutory -- where we've arrived now with all
19   the precedent is that the jury has to make that specific
20   finding of over 50 grams in order for the mandatory
21   minimum in this case of 20 years to be applicable.
22             THE COURT:  I don't -- with all due respect, I
23   don't think that's correct.
24             MR. LONERGAN:  Well --

                          Page 37

120707USvsWashington.txt
25                THE COURT:   I believe that when we're talking

                                                                45

1    about mandatory minimums, as long as what the Court finds
2    as part of the sentencing process does not cause the
3    maximum to be extended, then I think the clear case
4    authority in this circuit is that the Court can make
5    findings in that respect based on the trial record, and
6    that it was not necessary that the jury make the finding
7    in order for -- in order for the mandatory minimum to
8    apply.
9                MR. LONERGAN:   Yes, Your Honor, I agree that
10    that is the state of the law.   We are objecting,
11    nonetheless, that that should be a requirement.
12                THE COURT:   Okay, sure.   No, that's fine.   I
13    understand that.   With that understanding then, I do
14    specifically make a finding that the amount of drugs that
15    the defendant is held responsible here does fall in this
16    range of 50 to 150.   And then for purposes of the
17    mandatory minimum, which in the case of this defendant --
18    excuse me just a minute -- which in the case of this
19    defendant what then becomes -- is it 20 years?
20                MR. MURPHY:   Yes, Your Honor.   I did file an
21    851 notice so it does have the enhancement.
22                THE COURT:   So 240 months --
23                MR. MURPHY:   Correct.
24                THE COURT:   -- on Count 1.
25                To which counts does the mandatory minimum

                                                                46

1    apply?   Just one?
2                MR. MURPHY:   Just one, Judge.
3                THE COURT:   Okay.   The guideline range -- the
                          Page 38

120707USvsWashington.txt

4     document I'm looking at is a total offense level of 38,

5     but I thought that -- that's reduced to 36?

6                PROBATION:  To 36, yes, Your Honor.

7                THE COURT:  Because of the amendment that went

8     into effect?

9                PROBATION:  No, Your Honor, because of the

10    agreed-upon 50 to 150 grams.

11               THE COURT:  Okay, all right.  So, it's 36,

12    criminal history category of two, and the range then

13    becomes -- it had been 262 to 327.  So, the range then

14    becomes 210 to 262.

15               MR. MURPHY:  Correct.

16               THE COURT:  Is that correct?

17               PROBATION:  Except for the mandatory minimum

18    in Count 1, the range is 240 to 262.

19               THE COURT:  Right.  All right.  So as to

20    Count 1, the range effectively becomes 240 to 262?

21               PROBATION:  Yes, Your Honor.

22               THE COURT:  As to the other counts, the range

23    would be 210 to 262?

24               PROBATION:  Yes, Your Honor.

25               THE COURT:  And let's see.  Supervised release

                                                        47

1     range, Count 1, minimum of six years.  Counts 2 through 14

2     is the same, six.  Count 15 is at least six.  And 16 and

3     17 is at least six.  So, it's at least six on all of them.

4     There's no specific element of restitution.

5                PROBATION:  Your Honor, on Count 1, I believe

6     the mandatory supervisory release range is eight years

7     with your findings today, the remainder of six years.

8                THE COURT:  Okay.  Eight on Count 1.  It's six

120707USvsWashington.txt

9    on the others.  Then the fine range, is that still 25,000

10    to 8 million?

11                    PROBATION:  It's 20,000 to 8 million.

12                    THE COURT:  20,000.  And special assessment is

13    $1,700?

14                    PROBATION:  Yes.  Again, Your Honor, check

15    that.  On Count 1, the supervised release range is at

16    least ten years.

17                    THE COURT:  Are we absolutely sure now?

18                    PROBATION:  Yes, Your Honor.

19                    THE COURT:  Ten years on Count 1, six years on

20    the others.  Okay.

21                    All right.  Mr. Bennett -- Adrein Bennett,

22    sir, have you had a reasonable opportunity to read this

23    presentence report and review it with your attorney?

24                    DEFENDANT ADREIN BENNETT:  Yes, sir.

25                    THE COURT:  We've resolved three objections to

                                                                    48

1    the report here, but in addition to that, is there

2    anything else in the report that you feel is inaccurate or

3    incomplete that you wish to challenge?

4                    DEFENDANT ADREIN BENNETT:  No, sir.

5                    THE COURT:  Pardon?

6                    DEFENDANT ADREIN BENNETT:  No, sir.

7                    THE COURT:  You understand you have the

8    opportunity to present evidence in mitigation; you also

9    have the right to make a statement to the Court on your

10    own behalf prior to the time that the Court imposes

11    sentence.  Do you understand?

12                    DEFENDANT ADREIN BENNETT:  Yes.

13                    THE COURT:  Mr. Murphy, are you aware of

                                Page 40

120707USvsWashington.txt

14    anything in the report regarding Adrein Bennett that is
15    inaccurate?
16            MR. MURPHY:  No, Your Honor.
17            THE COURT:  Okay.  So, I think -- let me --
18    just so we're all clear on this, state one more time,
19    total offense level 36, criminal history category of 2.
20    On Count 1, there's a custody range of 240 to 262 because
21    of the mandatory minimum.  On the other counts, it's 210
22    to 262.  Concerning supervised release, on Count 1 it's
23    ten years to life.  On the other counts, six years to
24    life.  Fine range is 20,000 to 8 million.  Special
25    assessment of $100.

                                                    49

1            Without waiving any objections you may have to
2    the Court's findings, do counsel agree that that is the
3    sentencing profile that results from the findings of the
4    Court?
5            MR. MURPHY:  Yes, Your Honor.
6            MR. LONERGAN:  Yes, Your Honor.
7            PROBATION:  Excuse me, Your Honor, again, I'm
8    sorry.  The total fine range after your findings is 20,000
9    to 14 million because in Count 1 the fine goes up to 8
10   million with the prior conviction.
11            THE COURT:  Say that again.  On Count 1 it
12   goes up to --
13            PROBATION:  On Count 1, the fine range is up
14   to 8 million.  So, the fine range for the guidelines is
15   20,000 to 14 million.
16            THE COURT:  14 million?
17            PROBATION:  Yes, Your Honor.
18            THE COURT:  I don't think that's going to make
                        Page 41

120707USvsWashington.txt

19    a difference, but all right.
20              THE CLERK:   Did you say $1700 special
21    assessment?
22              THE COURT:   That's my understanding.
23              Mr. Murphy, do you have a statement to make
24    regarding sentence?
25              MR. MURPHY:   Judge, the government is

                                                        50

1    recommending a sentence, again, within the Court's
2    discretion of the 240 to 262 with regard to these counts.
3    We believe that that adequately addresses his leadership
4    role in this particular street gang in Peoria and that a
5    sentence, particularly on Count 1, of 240, of course, is
6    mandated.
7              THE COURT:   Thank you.
8              Mr. Lonergan?
9              MR. LONERGAN:   Your Honor, we would simply ask
10   the Court to look at the bottom of the guideline ranges
11   that are permissible in this case which is 240 months and
12   find that is more than sufficient to meet the ends of
13   justice in this case, and anything more is an unnecessary
14   punishment for purposes of Mr. Bennett.
15             THE COURT:   All right.   Thank you.
16   Mr. Bennett, is there anything you'd like to say to the
17   Court on your own behalf before I impose sentence?
18             DEFENDANT ADREIN BENNETT:   No, sir.
19             THE COURT:   The Court adopts the factual
20   findings and guideline application as contained in the
21   presentence report.   This was a major drug conspiracy that
22   inflicted a lot of harm on this community.   You knew
23   exactly what you were doing as you conducted this business
                              Page 42

120707USvsWashington.txt

24    and, actually, looked pretty comfortable doing it,
25    frankly.

                                                    51

 1            Anyway, the mandatory minimum sentence here of
 2    240 months, there are times when I disagree with the
 3    mandatory minimum sentence.  Sometimes I think it's too
 4    high.  But, frankly, I don't think it's too high in this
 5    case.  But --
 6            You're going to have to control that or leave
 7    the courtroom immediately, please.
 8            All these sentencing factors that exist under
 9    the statute -- nature and circumstances of the offense;
10    major drug conspiracy; your history and characteristics;
11    not much criminal activity before this, but big-time in
12    this situation; as I've already found, you were the leader
13    of the group; the need for the sentence to reflect the
14    seriousness of the offense and promote respect for the law
15    and provide just punishment, perform adequate deterrence
16    to the public and protect the public from further crimes
17    by you and also consider the application of the
18    guidelines.
19            Taking all of that into account, I believe
20    that the proper sentence is to a sentence at the number of
21    240 months.  And so pursuant to the Sentencing Reform Act
22    of 1984, the defendant Adrein Bennett is hereby committed
23    to the custody of the Bureau of Prisons for a period of
24    240 months on Counts 1 through 17, all concurrent with
25    each other.  No fine is recommended.

                                                    52

 1            Going to have to leave the courtroom or be
                        Page 43

120707USvsWashington.txt
2    quiet.  You're welcome to stay here, but that's it.  I

3    would ask the CSOs if anyone else has trouble controlling

4    their emotions, they're going to have to leave the

5    courtroom.

6              Following your release from custody, you shall

7    serve a ten-year term of supervised release on Count 1,

8    six-year term of supervision in Counts 2 through 14.

9              And what I'm looking at now here it says

10   eight-year term on Count 15.  Is that required in Count

11   15?

12             PROBATION:  No, Your Honor, just six years.

13             THE COURT:  Then it's six years.  Six years.

14   Ten years on count -- six years on all the other counts,

15   concurrent with each other.

16             Within 72 hours of your release from custody,

17   you shall report in person to the probation office in the

18   district to which you are released.  While on supervision,

19   you shall not commit another federal, state or local

20   crime.  You shall not possess a controlled substance.  You

21   shall submit to one drug test within 15 days of release

22   and two drug tests thereafter as directed.  In addition,

23   pursuant to the Justice for All Act, you should cooperate

24   in the collection of DNA as directed by Probation or the

25   Bureau of Prisons.

                                                         53

1              In addition to the standard conditions of

2    supervision, you shall abide by the following special

3    conditions.  Number one:  You shall refrain from any use

4    of alcohol and shall not purchase, possess, use,

5    distribute or administer any controlled substance or any

6    paraphernalia related to any controlled substance except

                              Page 44

120707USvsWashington.txt

7    as prescribed by the physician.  You shall, at the
8    direction of the probation officer, participate in a
9    program for substance abuse treatment, including not more
10   than six tests per month to determine whether you have
11   used controlled substances and/or alcohol.  You shall pay
12   for these services as directed.
13            Number two:  You shall obtain a GED within the
14   first 12 months of supervision if you have not already
15   obtained one while in custody.
16            Number three:  You shall not own, purchase or
17   possess a firearm, ammunition or other dangerous weapon.
18            Number four:  If you are unemployed after the
19   first 60 days of supervision, or if you're unemployed for
20   30 days after termination or layoff from employment, you
21   shall perform at least 20 hours of community service work
22   per week at the direction of the U.S. Probation Office
23   until gainfully employed.
24            Number five:  You shall not associate with any
25   member of any street gang.  You shall not wear or carry on

                                                              54

1    your person any colors or any signs, symbol or
2    paraphernalia associated with gang activity.  Only gang
3    tattoos received prior to incarceration are not considered
4    a violation of this condition.
5            Number six:  You shall not own, purchase or
6    possess a firearm, ammunition or other dangerous weapon.
7    A special assessment of $1700 is imposed and payable
8    immediately.
9            I will recommend that you serve your sentence
10   in a facility as close to your family in Peoria, Illinois,
11   as possible, that you serve your sentence in a facility

120707USvsWashington.txt

12    that will allow you to participate in a residential drug

13    abuse program and maximize your exposure to educational

14    and vocational opportunities.

15              You do, of course, have the right to file a

16    notice of appeal in this case.  If it is your wish to

17    appeal, I instruct you that any notice of appeal must be

18    filed with the clerk of the court within ten days of

19    today's date.  As your attorney, Mr. Lonergan has an

20    absolute responsibility to file that notice for you if

21    that is your wish.

22              Do you understand?  Do you understand, sir?

23    DEFENDANT ADREIN BENNETT:   Yes.

24              MR. LONERGAN:   Judge, we would just ask the

25    Court one favor, and that's -- we know you made the

                                                        55

1    specific recommendation for a facility as close to his

2    home as possible.  Could you also recommend FCI Pekin as

3    you did with the other defendants?

4              THE COURT:  I'm willing to do that.  I can

5    tell you they're not going to probably put them all there.

6              MR. LONERGAN:  I understand that, Judge, just

7    every little bit --

8              THE COURT:  I don't have any problem

9    recommending it, but they'll -- they will sort it out.

10             MR. LONERGAN:  I understand.

11             THE COURT:   Not all three of them are going to

12    go there.  Anything else?

13             MR. MURPHY:   No.

14             MR. LONERGAN:   No, sir.

15             THE COURT:   Okay.   Good luck.

16             Okay.   Mr. Loeffel, back to your objections.

                          Page 46

120707USvsWashington.txt

17    I think your first objection is also addressing the

18    mandatory minimum?

19          MR. LOEFFEL:  That is correct, Your Honor.  I

20    believe factually the argument I presented to the jury was

21    that Mr. Washington was responsible for direct deliveries

22    of approximately 22.6 grams of crack cocaine, I believe.

23    The jury, of course, did not find him guilty as to weight.

24    They did find him guilty as to being a member of the

25    conspiracy.

                                                          56


1           What I am making here in this first objection

2     is a purely legal argument regarding whether it is

3     necessary for the jury to make a finding as to that

4     statutory element for the mandatory minimum to apply.  I

5     would note, however, Your Honor, that even if the jury had

6     found Mr. Washington guilty of only the delivery of the

7     22.6 that his guideline range under his criminal history

8     category of six would have been 120 to 150 months.

9           I'm aware that the Court has already made a

10    legal finding as to that argument in addressing the

11    argument made by Mr. Lonergan.

12          THE COURT:  Yes, I think the law, at least at

13    this time, is clear in this circuit that -- I'm trying to

14    remember.  I have a case in my office.  One of them is the

15    James case and there's another one, Rodriguez or something

16    like that.  But they clearly say that unless the effect of

17    the finding is to increase the statutory maximum that the

18    Court clearly has the authority to do that and does not

19    have to have a finding by the jury in order to reach a

20    finding that the mandatory minimum should apply.

21          MR. LOEFFEL:  Yes, Your Honor.

                    Page 47

120707USvsWashington.txt

22      THE COURT:  So, my finding on number one would
23    be the same, that that should be denied.  It's clear to
24    me, considering the entire trial record, that this
25    defendant is responsible for more than just his direct

57

1    sales.  He was part of this conspiracy, and the law says
2    that he's responsible for anything that was reasonably
3    foreseeable.  And I think in that sense, reasonably
4    foreseeable applies to all the evidence that the Court
5    heard about deliveries, whether he was personally involved
6    in the delivery or not.  So, I think the objection is
7    without merit.
8            I'm not sure, but I think maybe that also
9    disposes of your second objection, but I could be wrong.
10           MR. LOEFFEL:  Your Honor, the relevant conduct
11    referred to in the second objection, I believe that that,
12    as stated there, it would stand as far as deliveries to a
13    Barbara Darling or an Ann Parr or Ann Newman or other
14    persons who did not testify.  We are aware of the record
15    in Mr. Washington's case as well as the Terry Reed trial
16    and your finding that the conspiracy as a whole
17    distributed between 150 to -- I'm sorry, 50 to 150 grams.
18           THE COURT:  Does the government have anything
19    to add in this respect?
20           MR. MURPHY:  No, we believe the finding ought
21    be the same.  Even if you broke down the individual
22    testimonies, which I have done, Judge, you still come up
23    between 50 and 150.
24           THE COURT:  I don't think there's any question
25    that we end up with between 50 and 150.  And I should

58

Page 48

120707USvsWashington.txt

1    note, obviously there's no requirement, but certainly the
2    defendant cannot be compelled to give evidence at this
3    point, but in the absence of additional evidence from the
4    defense, I think the Court's finding clearly is that it's
5    between 50 and 150 grams so that's denied.
6            The third objection has to do with the
7    reference to page 7, paragraph 18.  It says there's
8    nothing in the transcript of the August 24th or 25th
9    transaction that would substantiate the statement, "During
10   the exchange, Washington threatened the undercover agent
11   with physical violence if he was the police."
12           Then you say, "During the trial, the
13   undercover agent stated he felt intimidated merely because
14   Washington was a large black man," but I thought that --
15   my recollection was that Mr. Washington did actually say
16   something, that is, to the effect that he -- he was in
17   physical -- he was going to physically harm the undercover
18   agent if it turned out that he was the police.  Is my
19   memory incorrect?  Is my --
20           MR. LOEFFEL:  Your Honor, I do have that
21   portion of the transcript, and I think both the government
22   and myself would agree that this referred to a transaction
23   that took place on August 24th.  This was the transaction
24   where I believe Mr. Washington initially shorted the
25   undercover agent.  There was an argument.  Mr. Washington

                                                        59

1    left.  The agent then called Adrein and complained.
2    Later, Mr. Washington and the agent were hooked back up,
3    and they had the following conversation as reflected in
4    Government's Exhibit 7.
5            The undercover agent said -- the undercover
                        Page 49

120707USvsWashington.txt

6    agent then said to Mr. Washington, "We cool?  All right?
7    Everybody's" --
8                    Mr. Washington says, "Hey."
9                    Agent:  -- "cool then.  All right?"
10                   Washington:  "Hey, I hustle to die for this.
11   Hear me?"
12                   Agent:  "I know.  I know.  I'm just trying to
13   make a little coin myself."
14                   Washington:  "Don't be on, I'm saying, don't
15   be on no police shit."
16                   Agent:  "I ain't on no police."
17                   Washington:  "For real?"
18                   Agent:  "Jennifer."
19                   Washington:  "You feel me?"
20                   Agent:  "I ain't feeling you, man."
21                   Washington:  "I'm telling you."
22                   Agent:  "I -- I -- this is fucking shit to die
23   over, all right?"
24                   Washington:  "For real."
25                   Agent:  "I'm serious, bud."
                                                          60

1                    Washington:  "No, I'm dead serious."
2                    And, Your Honor, I think that that was what
3    the agent was referring to when he was saying that he felt
4    intimidated, but I don't believe that goes to the level of
5    an actual credible threat of violence.
6                    THE COURT:  Thank you.
7                    Mr. Murphy?
8                    MR. MURPHY:  Judge, did the defendant actually
9    say, "If you're the police, I'm going to kill you"?  No,
10   he did not.  We have the tape here of the transaction.
                              Page 50

120707USvsWashington.txt

11    However, was the officer reasonable in interpreting that

12    to be an explanation of what was going to happen to him if

13    he was the police?  I find that to be a very reasonable

14    interpretation of that.

15          I would further add that, again, this

16    particular objection does not add or detract from the

17    defendant's guideline calculation.

18          THE COURT:  I agree that it doesn't change the

19    numbers, but it is an objection nonetheless, and I do

20    believe that the objection is without merit.  There's

21    absolutely nothing that would require that certain words

22    be used in order for it to be considered a threat.  I

23    don't know if -- it seems to me even from your reading of

24    it, Mr. Loeffel, that it was pretty clear what was being

25    communicated.  If you're the police, then he was in big

                                                    61

1    trouble.

2          I'm trying to remember, who was the undercover

3    agent?

4          MR. MURPHY:  Agent Brock of the M.E.G. unit.

5          THE COURT:  All right.  Anyway, the objection

6    is denied.

7          The next item is the weight, and what is there

8    that's unresolved about the weight?  I think I've already

9    taken care of that, haven't I?

10          MR. LOEFFEL:  Yes, we have, Your Honor.

11          THE COURT:  Okay.  That objection is denied.

12    The Court specifically finds that it's between 50 and 150.

13          The next -- the last objection that I show is

14    objection to distributing 306 grams of crack to

15    Washington.  Let me ask, first of all, what's the

                          Page 51

120707USvsWashington.txt

16    government's position on this?  Let me get to paragraph

17    32.  Paragraph 32 says, "During the course of the

18    conspiracy, Washington was responsible for distributing

19    306 grams of crack cocaine."

20         I had the impression that -- just from some

21    comment the probation officer made informally before the

22    hearing that maybe you had reached an agreement with

23    Mr. Loeffel on that.

24         MR. MURPHY:  Judge, we had agreed with

25    Mr. Loeffel that we were not going to be presenting the

62

1    testimony of these other two individuals to sustain the

2    some 300 grams of crack cocaine that the probation office

3    had used as relevant conduct.  Our position is the same as

4    then Mr. Washington -- Mr. Adrein Bennett's case.  It

5    doesn't matter today.  When you take out that quantity of

6    crack cocaine, the finding -- the Court's finding of 50 to

7    150 is still the correct finding.

8         THE COURT:  Why don't we just change the

9    wording in paragraph 32 so that it says at the end that

10    he's responsible for distributing in the range of 50 to

11    150 grams of crack cocaine?

12         MR. MURPHY:  That's satisfactory with the

13    government.

14         THE COURT:  All right.  I realize you don't

15    agree with that either, but having made that finding, is

16    that -- are you satisfied with that as a way of dealing

17    with this?

18         MR. LOEFFEL:  Yes, Your Honor.  In my

19    commentary on the sentencing factor, I had stated that

20    even without the testimony of those people that didn't

Page 52

120707USvsWashington.txt

21    testify, that there may be sufficient -- there may have
22    been sufficient evidence presented at trial to, to justify
23    the 50 to 150.  So, I certainly do not disagree that the
24    Court could make that finding.
25              THE COURT:  All right.  That's what I'm going

                                                      63

1     to do.  Any other objections?
2               MR. LOEFFEL:  No, no objections -- no further
3     objections to the presentence investigation, Your Honor.
4               THE COURT:  All right.  Thank you.
5     Mr. Washington, have you had a reasonable opportunity to
6     read the presentence report in this case and review it
7     with your attorney?
8               DEFENDANT WASHINGTON:  Yes.
9               THE COURT:  I'm sorry.  Could you use the
10    microphone, please?
11              DEFENDANT WASHINGTON:  Yes.
12              THE COURT:  I've already -- I've resolved
13    these five objections that were put forward by your
14    attorney.  Is there anything else in the report you feel
15    is inaccurate or incomplete that you wish to challenge?
16              MR. LOEFFEL:  Your Honor, Mr. Washington did
17    want to address the criminal history category.  He
18    believes that that overstates his conduct or his history,
19    and I believe that I have addressed that in my commentary
20    on sentencing factors.
21              THE COURT:  Hold on a minute.  Let me get to
22    your criminal history.
23              Your position on that is what; that up to the
24    point of traffic related that it's overrepresented?
25              MR. LOEFFEL:  Well, Your Honor, he is placed
                        Page 53

120707USvsWashington.txt

64

1     -- it addresses -- it addresses an argument that I would
2     be making that he should be sentenced toward the lower
3     range or that the criminal history category should not be
4     stressed -- overly stressed when the Court pronounces
5     sentence.
6          THE COURT:  My question is, If you're saying
7     that it's overrepresented, why is it overrepresented?
8          MR. LOEFFEL:  What I mean by overrepresented,
9     Your Honor, is that even though technically if you add up
10    all these misdemeanors and Mr. Washington's one felony for
11    that class four aggravated unlawful use of a weapon, you
12    do come up with 13 points which places him in that
13    category for the worst of the worst.  But I'm stating that
14    when you look at this history and see that it's mostly
15    misdemeanor offenses, that there's no crimes of violence,
16    there's only one felony, there's no credible threats of
17    violence, there's no prior drug convictions, that we
18    should -- that we should not attach too much significance
19    to his criminal history category, even though technically
20    he does fall into it.
21         THE COURT:  All right.  Mr. Murphy, would you
22    respond to that?  I'm looking at his points right now.
23    He's got one point for retail theft; he's got one point
24    battery, one point for illegal transportation, one point
25    for uninsured motorist, two points for resisting police,

65

1     three points for the aggravated unlawful use of weapon,
2     two points for resisting arrest and one point for -- I'm
3     sorry -- one point for suspended license, one point

Page 54

120707USvsWashington.txt

4       suspended license, one point suspended license.

5                   What's your position on whether that

6       overrepresented his criminal history?

7                   MR. MURPHY:  It's our position that 13 points

8       does accurately portray his criminal past.  I just counted

9       up here.  There are approximately a dozen convictions that

10      he receives no points for.  Of course, we know there are

11      several other arrests that he received no consideration

12      for.

13                  THE COURT:  But --

14                  MR. MURPHY:  This defendant may well be at the

15      low end of six, but he is still a properly calculated six.

16                  THE COURT:  Most of the ones that he didn't

17      get any points for were traffic-related or giving a false

18      name when he was arrested.

19                  MR. MURPHY:  Correct.  But I would indicate

20      that that does indicate an extremely high disregard of the

21      law when it comes to his driving privileges.  And for him

22      to say that this is just a non-serious traffic offender I

23      think is belied by this record that shows he has a dozen

24      arrests that aren't even counted here.

25                  THE COURT:  All right.  I'll make that

                                                        66

1       decision when I impose sentence.

2                   Other than that, Mr. Washington, anything else

3       in the report that is inaccurate that you wish to

4       challenge?

5                   DEFENDANT WASHINGTON:  Yes, I just wanted to

6       know which prison I will be going to so I can get some --

7                   THE COURT:  I'm sorry?

8                   DEFENDANT WASHINGTON:  I got a bad back so I

                              Page 55

120707USvsWashington.txt
```
 9      wanted to have treatment for that.

10              THE COURT:  All right.  I'll make a note --

11      make a special note of that.  What was it you said about

12      the prison?  Do you want me to recommend FCI Pekin for you

13      also?

14              DEFENDANT WASHINGTON:  Yes.

15              THE COURT:  Okay.  All right.  Is the

16      government aware of anything in the report that is

17      inaccurate?

18              MR. MURPHY:  No, Your Honor.

19              THE COURT:  Do you have any additional

20      evidence?

21              MR. MURPHY:  No, Judge.

22              THE COURT:  Mr. Loeffel, do you have any

23      additional evidence?

24              MR. LOEFFEL:  No, Your Honor.

25              THE COURT:  All right.  So, let me -- still at
```
                                                    67
```
 1      a total offense level of 32, correct?

 2              PROBATION:  No, Your Honor, it's 30.

 3              THE COURT:  30.  That's right.  Is there a

 4      statutory mandatory minimum here?  What is it?

 5              PROBATION:  With respect to Count 1 there is.

 6              THE COURT:  What is it?

 7              PROBATION:  It's 120 months.

 8              THE COURT:  20 years?

 9              MR. LONERGAN:  No, 10 years.

10              THE COURT:  120 months.

11              MR. MURPHY:  With respect to count 18, there

12      is a mandatory minimum as well.

13              THE COURT:  Of five years?
```

120707USvsWashington.txt

14            MR. MURPHY:  Yes, Your Honor.

15            THE COURT:  Well, this sheet that I have is

16    not up to date then because it's based on the total

17    offense level of 32.  What is the -- what is the custody

18    range on Count 1?

19            PROBATION:  168 to 210.

20            THE COURT:  168 to 210.  Counts 3, 5, 6, 7, 14

21    and 16 and 17.

22            PROBATION:  They do not carry a mandatory

23    minimum.  So, the maximum is just 240.

24            THE COURT:  Okay.  168 to 210?

25            PROBATION:  Yes, sir.

                                                68

1            THE COURT:  And then on Count 18 --

2            PROBATION:  Mandatory minimum of 60 months.

3            THE COURT:  60.  But the guideline range is

4    still 168 to 210?

5            PROBATION:  Yes, sir.

6            THE COURT:  And then supervised release is --

7            PROBATION:  At least five years on Count 1.

8            THE COURT:  Five years?

9            PROBATION:  Yes, sir.

10            THE COURT:  Okay.  And three years on 2, 3, 5,

11    6, 7, 14, 16 and 17?

12            PROBATION:  Yes, sir.

13            THE COURT:  Four years on Count 18?

14            PROBATION:  Yes, sir.

15            THE COURT:  What is the fine range?

16            PROBATION:  Fine range becomes 15,000 to 14

17    million.

18            THE COURT:  15,000?

120707USvsWashington.txt
19            PROBATION:   Yes.

20            THE COURT:   14 million?

21            PROBATION:   Yes, sir.

22            THE COURT:   Special assessment is 1,000.

23            PROBATION:   Yes, sir.

24            THE COURT:   Without waiving any objections to

25    the findings of the Court, Counsel, do you agree that that

                                                            69

1     is the correct sentencing profile?

2            MR. LOEFFEL:   We do, Your Honor.

3            THE COURT:   Okay.   Mr. Murphy, do you have a

4     statement to make regarding sentence?

5            MR. MURPHY:   Judge, we believe that the

6     appropriate sentence is one within the guideline range as

7     calculated of 168 to 210 and would entrust the sentence to

8     the Court's discretion.

9            THE COURT:   All right.   Mr. Loeffel?

10            MR. LOEFFEL:   Your Honor, at trial

11    Mr. Washington never denied that he made direct

12    deliveries.   We submitted the government -- subjected the

13    government to very little cross-examination on that.   We

14    would submit, Your Honor, that even though this was a

15    serious conspiracy, that Mr. Washington was a spoke on a

16    wheel, that he had a very low level role in this.   We

17    would -- we would suggest, Your Honor, that given

18    Neashon's lack of history of drug offenses or crimes of

19    violence, forcible felonies or other significant crimes,

20    given that he had no leadership roles in the conspiracy,

21    given the reasoning of the United States Supreme Court in

22    Kimbrough, that we submit that a sentence of no -- that a

23    sentence of 120 but no more than 160 months would be

                          Page 58

120707USvsWashington.txt
24    adequate to accomplish the sentencing considerations of
25    Section 3553(A).   Thank you.

                                                                70

1               THE COURT:   Thank you.
2               Mr. Washington, is there anything you'd like
3    to say to the Court on your own behalf before I impose
4    sentence?
5               DEFENDANT WASHINGTON:   No, Your Honor.
6               THE COURT:   Thank you.   Excuse me just a
7    moment.
8               The Court adopts the factual findings and
9    guideline recommendation as contained in the presentence
10    report.   Like the others that I've already sentenced
11    today, concerning the nature and circumstances of the
12    offense, this was a major drug conspiracy.   You played an
13    ongoing, sustained role in that conspiracy.   Your personal
14    characteristics, adopted a criminal history category of
15    six.   I think in looking at it that I think it may --
16    becomes very close, if it doesn't make it to, very close
17    to overrepresenting your criminal history category.   I
18    would say that at least arguably you should be at a level
19    five rather than a level six, and I'm going to take that
20    into account when I impose sentence.   The sentence is to
21    reflect the seriousness of the offense, promote respect
22    for the law and provide just punishment, also provide
23    adequate deterrence to others and adequate deterrence to
24    you.   And also I'm supposed to give serious deference,
25    consideration to the guidelines.

                                                                71

1               Taking all of that into account, the Court
2    finds that the sentence that meets all of the sentencing
                          Page 59

3    factors of 3553, sufficient but not greater than necessary

4    to do that, is as follows:  Pursuant to the Sentencing

5    Reform Act of 1984, the defendant Neashon Washington is

6    hereby committed to the custody of the Bureau of Prisons

7    for a period of 140 months, which is below the guideline

8    range -- not substantially, but it is below the guideline

9    range.  Counts 1, 2, 3, 5, 6, 7, 14, 16, 17 and 18, all of

10   those will run concurrent with each other.  The Court

11   finds you are not capable of paying a fine.  No fine is

12   imposed.  Following your release from custody, you shall

13   serve a five-year term of supervised release on Count 1.

14   Three-year term of supervised release in all other counts

15   -- I'm sorry, Counts 2, 3, 5, 6, 7, 14, 16 and 17 and a

16   four-year term on Count 18, all concurrent with each

17   other.

18              Within 72 hours of your release from custody,

19   you shall report in person to the probation office in the

20   district to which you are released.  While on supervision,

21   you shall not commit another federal, state or local

22   crime.  You shall not possess a controlled substance.  You

23   shall submit to one drug test within 15 days of release

24   and two drug tests thereafter as directed.  Pursuant to

25   the Justice for All Act, you shall cooperate in the

                                                          72

1    collection of DNA as directed by Probation or the Bureau

2    of Prisons.

3              You shall comply with the standard conditions

4    of supervision and the following special conditions.

5    Number one:  You shall refrain from any use of alcohol and

6    shall not purchase, possess, use, distribute or administer

7    any controlled substance or any paraphernalia related to

120707USvsWashington.txt

8    any controlled substance except as prescribed by a
9    physician.  You shall, at the direction of the probation
10   officer, participate in a program for substance abuse
11   treatment, including not more than six tests per month to
12   determine whether you have used controlled substances
13   and/or alcohol.  You shall pay for these services as
14   directed.
15           Number two:  If you're unemployed after the
16   first 30 days of supervision or if unemployed for 30 days
17   after termination or layoff, you shall perform at least 20
18   hours of community service work per week at the direction
19   of the probation office until gainfully employed.
20           Number three:  You shall not own, purchase or
21   possess a firearm, ammunition or other dangerous weapon.
22   A special assessment of $1,000 is imposed and payable
23   immediately.  I will recommend that you serve your
24   sentence in a -- in the least restrictive facility as
25   close to your family in Peoria, Illinois, as possible.  I

                                                        73

1    will specifically recommend FCI Pekin.  I will further
2    recommend that you serve your sentence in a facility that
3    will allow you to participate in a comprehensive drug
4    treatment program and maximize your exposure to
5    educational and vocational opportunities.
6           I will also specifically recommend to the
7    Bureau of Prisons that you receive full medical
8    examination and treatment for your back condition.  Have
9    you been receiving any treatment at all for it?
10           DEFENDANT WASHINGTON:   (Shakes head.)
11           THE COURT:  Have you had the condition -- did
12   you have the condition before you were put in jail?
                        Page 61

120707USvsWashington.txt

13          MR. LOEFFEL:  He had a lumbar laminectomy and
14     it's --
15          THE COURT:  All right.  I will ask in the
16     strongest terms possible that you get a full medical
17     examination of your back when you get to the Bureau of
18     Prisons.
19          You do, of course, have the right to file a
20     notice of appeal in this case.  If it is your wish to
21     appeal, I instruct you that any notice of appeal must be
22     filed with the clerk of the court within ten days of
23     today's date.  As your attorney, Mr. Loeffel has an
24     absolute responsibility to file that notice for you if
25     that is your wish.

                                                        74

1          Do you understand, sir?
2          DEFENDANT WASHINGTON:  Yes, sir.
3          THE COURT:  Anything else?
4          MR. MURPHY:  No.
5          THE COURT:  Mr. Loeffel?
6          MR. LOEFFEL:  No, Your Honor, thank you.
7          THE COURT:  Good luck.
8          THE CLERK:  Court's in recess.
9               (Proceedings concluded.)
10
11
12
13
14
15
16
17
                         Page 62

120707USvsWashington.txt

18

19

20

21

22

23

24

25

75

1    STATE OF ILLINOIS  :
                        :  SS
2    COUNTY OF PEORIA   :

3

4
              I, JENNIFER E. JOHNSON, CSR, RMR, CRR, CBC,
5    and Notary Public in and for the County of Tazewell, State
     of Illinois, do hereby certify that the foregoing
6    transcript of proceedings is true and correct to the best
     of my knowledge and belief;
7
              That I am not related to any of the parties
8    hereto by blood or marriage, nor shall I benefit by the
     outcome of this matter financially or otherwise.
9

10

11

12

13    _____
      JENNIFER E. JOHNSON
14    License #084-003039
      CSR, RMR, CRR, CBC
15    Notary Public, State of
      Illinois at Large
16

17    My Commission expires May 8, 2009.

18

19

20

21

22

120707USvsWashington.txt

23

24

25