E-FILED [1]
Thursday, 24 January, 2008  01:31:36 PM
Clerk, U.S. District Court, ILCD

1

THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

2

3

4

5

UNITED STATES OF AMERICA,            )
6                                     )
                    Plaintiff,        ) Criminal No.
7                                     ) 06-10033
          vs.                         ) Peoria, Illinois
8                                     )
ADRIEN BENNETT, TERRY BENNETT         )
9  NEASHON WASHINGTON and KONTYUS     )
ROBINSON,                             )
10                                    )
                    Defendants.       )

11

12

13

14                   TRANSCRIPT OF PROCEEDINGS
                      JANUARY 11, 2007

15

16

17                        BEFORE:

18              HONORABLE MICHAEL M. MIHM
                United States District Judge

19

20

21

22

23

24

25

```
 1                         APPEARANCES:

 2                    K. TATE CHAMBERS, ESQ.
                     BRADLEY W. MURPHY, ESQ.
 3               Assistant United States Attorneys
                    200 Fulton Street, Suite 400
 4                  Peoria Island, Illinois  61602
                 (Appeared on Behalf of the Government)

 5

 6                    JOHN P. LONERGAN, ESQ.
                 411 Hamilton Boulevard, Suite 1708
 7                   Peoria, Illinois  61602
                 (Appeared on Behalf of Adrein Bennett)

 8

 9                    MICHAEL J. PETRO, ESQ.
                     53 W. Jackson, Suite 1264
10                   Chicago, Illinois  60604
                 (Appeared on Behalf of Terry Bennett)

11

12                   WILLIAM C. LOEFFEL, ESQ.
                     139 E. Washington Street
13                  East Peoria, Illinois  61611
                 (Appeared on Behalf of Neashon Washington)

14

15                    JEFFREY FLANAGAN, ESQ.
                 411 Hamilton Boulevard, Suite 1708
16                   Peoria, Illinois  61602
                 (Appeared on Behalf of Kontyus Robinson)

17

18

19

20

21

22

23                    Karen S. Hanna, C.S.R.
                     U.S. District Court Reporter
24                   Central District of Illinois
25  Proceedings recorded by mechanical stenography, transcript
    produced by computer
```

1          THE COURT:  This is case number 06-10033.

2    Defendant Adrien Bennett is here with Attorney John

3    Lonergan.  Defendant Terry Bennett is here with Attorney

4    Michael Petro.  Defendant Neashon Washington is here with

5    Attorney William Loeffel.  Defendant Kontyus Robinson is

6    here with Attorney Jeff Flanagan.  The United States is

7    represented by Tate Chambers and Brad Murphy.

8          Let me ask, first of all, let me direct a

9    question to the United States.  What is, in your point of

10   view, the status of discovery?

11         MR. CHAMBERS:  Your Honor, we have had numerous

12   discussions about the discovery.  We continuously

13   double-check to make sure they're happy and we just

14   learned that there may be two documents that we think is

15   in discovery that they have not found there yet, so we're

16   going to go back and check on those.  They also this

17   morning asked for some chain of custody reports which may

18   or may not have been turned over.  So with the exception

19   of those things -- of course we can ask counsel -- but I

20   think discovery is complete.

21         THE COURT:  Let me ask defense counsel, do each

22   of you generally agree with that?  Mr. Loeffel?

23         MR. LOEFFEL:  I do, Your Honor.  I will say the

24   Government has been cooperative in getting the discovery

25   to us and making the agent available to us for working

1  with us on it.

2          THE COURT:  Does anyone disagree with that or

3  have a specific issue concerning discovery?  Okay.  There

4  is a motion to dismiss that I'm prepared to hear argument

5  on.  Mr. Petro, I think that was your -- is that your

6  motion?

7          MR. PETRO:  Yes, Judge.

8          MR. LONERGAN:  Also, before Mr. Petro proceeds,

9  we have not filed our intent to join in that motion.  We

10 would like to do so verbally at this time, that we intend

11 to join in this motion.

12         THE COURT:  Mr. Loeffel, you're joining in that?

13         MR. LOEFFEL:  Yes, Your Honor, and yesterday I

14 did file an abbreviated document.

15         THE COURT:  I saw that.  Mr. Flanagan, are you

16 joining?

17         MR. FLANAGAN:  Yes, Your Honor.

18         THE COURT:  All right.  Well, I'm prepared to

19 hear any argument that the defense has.  Mr. Petro, go

20 ahead.

21         MR. PETRO:  If I may, I had some notes.

22         THE COURT:  What we're talking about here is the

23 question of what is crack cocaine and how it needs to be

24 charged or proved.

25         MR. PETRO:  Judge, in this particular case,

1    crack cocaine has been charged, so it must be proved.  It

2    must be proved because, despite the Government's admission

3    it is an element of the offense, because it does change

4    the maximum penalty provided by statute.  The Court is

5    well aware that 50 grams of crack, the guideline -- the

6    sentencing range is 10 to life.  For 50 grams of cocaine

7    base, it's zero to 20 years, Judge.

8              THE COURT:  I guess my question is why isn't

9    this premature?  Why shouldn't they have the opportunity

10   to prove at trial that it is in fact crack cocaine and if

11   they don't, at the close of their case you would make a

12   motion for a judgment of acquittal and, if you're right, I

13   will grant it at that time?  Why is this something that I

14   would be dismissing now without giving them the

15   opportunity to carry the proof?

16             MR. PETRO:  Judge, the word crack has

17   significance as far as sentencing, but what crack actually

18   is is indefinable at this point.

19             THE COURT:  The Seventh Circuit cases don't seem

20   to suggest that it's indefinable, do they?

21             MR. PETRO:  I think it does.

22             THE COURT:  The Seventh Circuit cases say it's

23   undefinable and there's no way the Government can

24   establish it?  My understanding was that they say that at

25   least when dealing with a combination of expert testimony,

 1    like lab report testimony, taken in conjunction with the

 2    testimony of an occurrence witness, typically a police

 3    officer who is familiar with crack cocaine, my

 4    understanding is that there are multiple cases that say

 5    that that is an adequate way to establish that that is

 6    what you're dealing with.

 7            MR. PETRO:  For sentencing purposes.  We're

 8    talking about with respect to --

 9            THE COURT:  Are you suggesting it would be any

10    different for any other purpose?  Why would it be any

11    different?  Why would there be a different standard?

12    Assuming you're correct, assuming you're correct that the

13    Government has a duty to prove this to a jury as part of

14    the guilt or innocence phase of the trial, why would I

15    adopt any rule other than what they've already said would

16    be used at sentencing?

17            MR. PETRO:  Well, Judge, if it's an element of

18    the offense --

19            THE COURT:  Do you have one case that says that?

20            MR. PETRO:  I have a number of cases that say,

21    from Edwards on, Judge, it can't be proven with forensics.

22    There is no scientific test to prove whether it's crack or

23    cocaine base.  The method of preparation is not important.

24    What the substance looks like or what it appears to look

25    like is not important.  It can be brown, it can be bright

1   white, it can be yellowish.

2            THE COURT:  Why wouldn't that same -- why

3   wouldn't that same wording apply at the time of

4   sentencing?

5            MR. PETRO:  Because I think the indictment

6   should be dismissed because they use this term of art in

7   the indictment, Judge.

8            THE COURT:  What I'm telling you is whether

9   you're saying -- these words that you're taking out of

10  these cases that say you can't do it this way, you can't

11  do it that way, what I'm saying is why would this be --

12  why would the words be any different then at the time of

13  sentencing when the Court is imposing sentence?  You said

14  the Seventh Circuit cases are all sentencing cases, right?

15           MR. PETRO:  I didn't.  I said that --

16           THE COURT:  What did you say?

17           MR. PETRO:  I said a large proportion of the

18  ones the Government cites are sentencing cases.  The one

19  case that stands firmly for the proposition with respect

20  to the mandatory minimum sentences and the enhanced

21  penalties as far as the life sentence, Edwards is the

22  case, Judge, and Edwards says clearly that all crack is

23  cocaine base, but not all cocaine base is crack.

24           THE COURT:  What year was the Edwards case?

25           MR. PETRO:  United States vs. Edwards was

1     decided in 2005, Judge.  But, Judge, my argument is that

2     the term crack cocaine is so vague that it leaves all of

3     the discretion as to what cocaine is at the table with the

4     prosecution.  It's whatever they want it to be.  It

5     doesn't matter what it looks like, doesn't matter what its

6     chemical structure is.

7                 THE COURT:  Well, I'm not sure --

8                 MR. PETRO:  But --

9                 THE COURT:  Please, when I start talking, you

10    stop.

11                MR. PETRO:  I sure will.

12                THE COURT:  I'm not sure that it's quite

13    accurate to say that it's what they say it is.  They don't

14    ultimately make the decision.  The trier of fact, whether

15    it be the judge or the jury, is the one who ultimately

16    makes the decision.

17                MR. PETRO:  And they are allowed to pursue their

18    personal predilections, Judge.  The real experts,

19    Mr. Chambers or the -- I don't mean to use his name in

20    person -- but the Government's brief essentially says the

21    real experts of what crack is are the users and the

22    agents.

23                THE COURT:  That's what the Seventh Circuit

24    says, isn't it?  Aren't they quoting from a case when they

25    say that?

```
 1                  MR. PETRO:  And that's why I say it's vague.

 2                  THE COURT:  Answer that question.  Aren't they

 3      quoting from a Seventh Circuit case when they say that?

 4      That quote is from the Seventh Circuit, isn't it?

 5                  MR. PETRO:  That's correct.

 6                  THE COURT:  Okay.

 7                  MR. PETRO:  But it's pre-Edwards language,

 8      Judge.

 9                  THE COURT:  All right.  So as I understand it,

10      according to your theory, it would be impossible for the

11      Government to prosecute a crack cocaine case period at

12      this point.

13                  MR. PETRO:  Correct.

14                  THE COURT:  Okay.

15                  MR. PETRO:  On an alternative note, Judge, in

16      responding to the Government's brief, they even admit in

17      page 1 even if the term was ambiguous, the appropriate

18      relief would be to proceed as if it's powder cocaine at

19      sentencing.  But the problem then becomes, Judge, what is

20      the mandatory minimum?  I mean what is the maximum penalty

21      provided by law?  I think that if they want to show it's

22      crack and they want to go above 20 years, then it's an

23      element of the offense and it's going to have to be proved

24      and you can't prove it because the definition is vague,

25      Judge.  No scientist can come in here and show it is
```

1    unless --

2         THE COURT:  I don't see how you're harmed by

3    that if it ultimately does end up being considered as

4    powder.

5         MR. PETRO:  Because we're going to have a trial,

6    Judge, and the maximum penalty provided by law is

7    substantially different.

8         THE COURT:  All right.  Do you have any other

9    arguments?

10        MR. PETRO:  No, Judge.

11        THE COURT:  All right.  Thank you.  What's the

12   response?

13        MR. CHAMBERS:  Your Honor, the Government's

14   response is that the statute is not ambiguous.  The Courts

15   in the Seventh Circuit have held for statutory purposes

16   under 841 that the definition of crack is the same as

17   found in the sentencing guidelines.  The sentencing

18   guidelines define crack as the street name for a form of

19   cocaine base usually prepared by processing cocaine

20   hydrochloride and sodium bicarbonate and usually appearing

21   in --

22        THE COURT:  Isn't this -- this is something more

23   than just a frivolous motion.  There certainly is a --

24   there is a serious reason for saying that -- or being

25   concerned about ambiguities so that people can conform

1    their conduct accordingly.  When you start getting a

2    definition like this, "usually prepared", "usually

3    appearing to be a certain way", I mean that's certainly

4    not a model of clarity in terms of how a person would

5    confirm their conduct to avoid getting prosecuted for

6    crack cocaine, is it?

7          MR. CHAMBERS:  It's not a model of clarity, but

8    I think in the Seventh Circuit the approach they have

9    taken is we're not going to use a specific definition like

10   "only cocaine processed with sodium bicarbonate", or "only

11   cocaine that's hard or rock-like", but instead we're going

12   to use the expert witness approach in that if it's crack

13   cocaine and the Government can produce the necessary

14   quantum of evidence to prove that through expert

15   testimony, either lay expert testimony or the testimony of

16   an agent, then that's the approach we're going to take.

17   In other words --

18          THE COURT:  In the Anderson case that you cite,

19   page 3, a 2006 case, it says:  "We have repeatedly held

20   the Government can prove the substance is crack by

21   offering the testimony from people familiar with the drug,

22   including those who sell or use crack since they are the

23   real experts."  Was that in the context of sentencing or

24   was that in the context of an enhanced penalty that came

25   up?

```
 1              MR. CHAMBERS:  Your Honor, I can't speak.  I
 2   can't tell you directly which way that came up.
 3              THE COURT:  What about the Edwards case?
 4              MR. CHAMBERS:  Well, what does that tell us?
 5   That tells us that -- the Edwards case that he's talking
 6   about, not the one cited in -- I think I cited both
 7   Edwards cases possibly, maybe later on the second one,
 8   but --
 9              THE COURT:  The Edwards case from 2005 is the
10   Seventh Circuit case.  It says the statute fails to define
11   crack cocaine.
12              MR. CHAMBERS:  Isn't that the same case though
13   that says the definition is the same as that found in the
14   sentencing guidelines?
15              THE COURT:  That was my memory and I'll ask him
16   that same question in a moment.
17              MR. CHAMBERS:  And that's where we end up.  Our
18   position is that it's not an element such that you would
19   dismiss the indictment as void for vagueness.  In the
20   bottom line, it comes down to a sentencing issue.
21              THE COURT:  But I think -- isn't what he's
22   talking about if this case goes to trial and the
23   Government -- you are asserting an enhanced penalty here,
24   correct?
25              MR. CHAMBERS:  That's correct.
```

1           THE COURT:  Your position is that how much crack

2    cocaine is involved?

3           MR. CHAMBERS:  Your Honor, Count 1 is more than

4    50 grams of cocaine base crack and other various counts

5    are more than 5 grams of cocaine base crack and there are

6    some counts that are not.

7           THE COURT:  Well, isn't it true that if this

8    case does go to trial, that part of the verdict that the

9    jury would return is a determination, if they can reach a

10   unanimous decision, as to the weight?

11          MR. CHAMBERS:  Based upon the expert testimony

12   presented by --

13          THE COURT:  I understand that, but answer my

14   question.

15          MR. CHAMBERS:  Yes.

16          THE COURT:  So that is something that -- you may

17   say the effect of it is sentencing, but the place where

18   that decision is going to be made is going to be made by

19   the trial jury as part of the guilt or innocent phase of

20   the trial.

21          MR. CHAMBERS:  No, your Honor, I would disagree

22   with you.  It's a special verdict that comes after.  It

23   says if you find the defendant guilty of Count 3, then

24   what drug weight was involved in Count 3.

25          THE COURT:  I understand that, but it's the

 1     trial jury that's going to consider that and come to their

 2     decision on the basis of, for example, proof beyond a

 3     reasonable doubt.

 4              MR. CHAMBERS:  Yes.

 5              THE COURT:  Correct?

 6              MR. CHAMBERS:  Yes.

 7              THE COURT:  I don't know who was just talking,

 8     but it can't happen again or you're out of here.  All

 9     right.  Go ahead.

10              MR. CHAMBERS:  Your Honor, that's basically

11     where we finish up.  We believe that it is defined in the

12     Seventh Circuit, it's defined as that in the sentencing

13     guidelines, and the Courts have held that and we believe

14     it shouldn't be dismissed as void for vagueness.

15              THE COURT:  Well, let me ask counsel, the

16     Edwards case that you cite, which is on the first page

17     here, 397 Fed. 3rd 570, the 2005 case, was our assumption

18     of that case correct?  What does that case stand for?

19              MR. PETRO:  It says -- it stands for the

20     proposition, Judge, that all crack is cocaine base, but

21     not all cocaine base is crack.

22              THE COURT:  Right.

23              MR. PETRO:  And then they go on to define crack

24     cocaine by the sentencing guidelines model which says

25     "usually" and then it says --

1          THE COURT:  So the answer to my question is the

2   way we have mentioned it earlier is correct, that that is

3   the case that says what it says about the statute itself

4   and then says that it's the same definition as the

5   sentencing guidelines.  That's the case we're talking

6   about, correct?

7          MR. PETRO:  If I may, just one second, Judge.

8          THE COURT:  The definition of crack is the same

9   as that found within the sentencing guidelines.  That

10  wording comes from U.S. vs. Edwards, 397 Fed. 3rd 570,

11  correct?  Isn't that what that case says?

12         MR. PETRO:  Edwards also --

13         THE COURT:  Just answer that question first,

14  please.  Is that -- that is what that case says, correct?

15         MR. PETRO:  I could not speak exactly as to that

16  issue, Judge.  I would like to have an opportunity to

17  review Edwards to see if it specifically says that.

18         THE COURT:  Let me get a copy of Edwards out

19  here and I'll decide that right now.  Does anybody have a

20  copy of it handy?

21         MR. PETRO:  I do, Judge.

22         THE COURT:  I should have brought a copy with

23  me.  I'm sorry.

24         MR. PETRO:  May I approach, Judge?

25         THE COURT:  I think Mr. Loeffel just handed me a

1  copy of it.  This is the slip opinion.  Do you have --

2  Mr. Petro, do you have the other case from the published

3  book?

4          MR. PETRO:  I sure do, Judge.  I don't mean to

5  be --

6          THE COURT:  This will work.

7          MR. PETRO:  Judge, if I may, I believe it's at

8  571, at the end of the page, on to 572.

9          THE COURT:  I'm actually further back than that

10  right now.  Hold on just a second.  Go ahead and make your

11  point.  571 is the first page of the opinion.

12          MR. PETRO:  All right.  Then I apologize, Judge.

13          THE COURT:  I think the part we're interested in

14  is actually back further.  Anyway, here, let me give this

15  back to you and you can refer to this copy of it if you

16  want.

17          I would simply say that my understanding of that

18  case is that the definition of -- for statutory purposes,

19  the definition of crack is the same as that found within

20  the sentencing guidelines.  That's my understanding.  If

21  there's something in that case that says it differently, I

22  would be happy to listen to it.

23          MR. PETRO:  Well, Judge, I would just -- this is

24  an extremely important issue for my client and all the

25  defendants and I just want to point out also what it says,

 1  ||  you know, the circuits can't agree on what it is.  It's

 2  ||  not defined in 841.  So a Court or a jury or anyone that

 3  ||  has to determine what crack cocaine is is open to whatever

 4  ||  interpretation that they possibly could want it to be.

 5  ||  Essentially, Judge, the people that smoke crack cocaine,

 6  ||  one of the decisions say, are the real experts.

 7  ||  Apparently we would have to have someone come in here and

 8  ||  actually smoke a sample of the crack cocaine and compare

 9  ||  it to the high they usually get when they use crack

10  ||  cocaine and then also compare that to the type of high

11  ||  they would get when they use powder cocaine.  At that

12  ||  point and time, Judge, the vagueness attributed to the

13  ||  guideline definition is great.  The fact that it's not

14  ||  defined in 841 by Congress has led the Seventh Circuit to

15  ||  say that, you know, this is really such a matter of such

16  ||  importance to the administration of criminal justice,

17  ||  surely it warrants the attention of Congress or resolution

18  ||  by the Supreme Court.  And this is important.  It's

19  ||  important to these individuals here, Judge, because we

20  ||  want to have a trial.  And if crack is an element of the

21  ||  offense and crack is not defined in 841, then I think the

22  ||  indictment should be dismissed.

23  ||          THE COURT:  We have repeatedly held that the

24  ||  Government can prove a substance is crack by offering

25  ||  testimony from people familiar with the drug, including

1  those who sell or use crack.  I understand what you're

2  concerned about here and I don't totally disagree with

3  you.  It would certainly be a better world if the statute

4  contained a definition and if the case law that I'm

5  referring to created a more objective definition than

6  crack being established by "looks like crack to me" or

7  "that smells like crack to me" or "that smokes like crack

8  to me".

9         But my problem is when I look at a case like

10  this Anderson case, it seems to me that you're asking me

11  to ignore what arguably is controlling precedent.  We

12  don't live in the Ninth Circuit or the Second Circuit.  We

13  live in the Seventh Circuit.

14         And I guess I'll go back to what I think I asked

15  you.  Maybe not.  Is there a Seventh Circuit case that in

16  any way suggests that the statute is so ambiguous that the

17  Government cannot prosecute under the statute or would

18  this be a case of first impression?

19         MR. PETRO:  The way that I've raised it, I would

20  probably say your first impression category.  But I would

21  say with respect to the Seventh Circuit, you can't prove

22  it by science because cocaine base and crack, it's been

23  shown in all the case law, have exactly the same chemical

24  structure.  No forensic chemist can come in here and

25  testify that this chemical structure proves that this

1    substance is crack.

2            Other cases suggest that the scientific method

3    for preparing crack cocaine, it doesn't have to be

4    bicarbonate because then the people that make the crack

5    would just switch, so it doesn't matter how you prepare

6    it, Judge.  It doesn't matter what it looks like because

7    it could be soft, it could be hard.  No one knows what it

8    has to be.  It doesn't matter what the purity of the

9    substance is, Judge, whether it's a hundred percent pure

10   or 3 percent pure.

11           THE COURT:  So I'm not sure you've answered my

12   question in terms of the Seventh Circuit authority.  The

13   question was whether or not any Seventh Circuit authority

14   suggests that the statute is unconstitutionally vague.

15           MR. PETRO:  No.  And in fact, I can say that I

16   have looked in all the circuits at this point, Judge.

17           THE COURT:  I don't think it's a frivolous

18   argument, but I have to decide and I'm not opposed to

19   breaking new ground if I think it's right, but, I mean,

20   when I look at this wording from the Anderson case, that

21   doesn't seem to suggest any concern or worry on the part

22   of the Seventh Circuit that the statute is

23   unconstitutionally vague.  Let me ask you this.  Do any of

24   those cases, Seventh Circuit authority, specifically

25   address the issue of vagueness?

1              MR. PETRO:  Not to my knowledge, Judge.

2              THE COURT:  Is the Government aware of any case

3    that does that?

4              MR. CHAMBERS:  Statutory vagueness?  No.  No.

5              THE COURT:  Well, I would like the Government to

6    respond further to this because what he's saying -- and I

7    think it's definitely something other than frivolous -- is

8    that where you don't have some objective scientifically

9    measurable standard to point at something and say that's

10   what this is and where arguably it's left to the vagaries

11   of the particular dope addict or perhaps a police officer

12   who has had a lot of experience with it on the street,

13   that seems to suggest a rather subjective determination,

14   possibly a moving target if you would as to what is or is

15   not crack cocaine.  Doesn't that give rise to

16   constitutional concerns about vagueness?

17             MR. CHAMBERS:  With respect to sentencing, Your

18   Honor, not with respect to the actual charge itself

19   because, once again, we don't believe it's an element of

20   the charge itself.  They could be found guilty of

21   distribution without the issue of crack versus powder

22   being the result.

23             THE COURT:  I agree.  Well, maybe we're talking

24   about -- maybe we're bogged down partially in semantics

25   here.  If this case goes to trial, they would be asked to

1    determine however many elements there are.  Distribution,

2    is that one of the charges?

3              MR. CHAMBERS:  Yes.

4              THE COURT:  Is the defendant -- has the

5    Government proven all these elements, whatever they are.

6    If they answer "yes", then you enter -- then the defendant

7    is guilty.  Are you saying that there's nothing about any

8    of this that would interfere with that verdict?

9              MR. CHAMBERS:  There is nothing, yes, with the

10   crack versus powder issue, correct.

11             THE COURT:  But then it comes up immediately

12   after that --

13             MR. CHAMBERS:  Yes.

14             THE COURT:  -- in the special verdict.  If you

15   find the defendant guilty, we also want you to go on and

16   consider the question of, what, was this powder cocaine as

17   opposed to crack cocaine?

18             MR. CHAMBERS:  And there they have the most

19   stringent test, beyond a reasonable doubt based on that

20   quantum of evidence.

21             THE COURT:  But are they first asked to

22   decide -- I'm trying to remember.  I don't specifically

23   remember it ever being put to a jury this way, was this

24   powder cocaine or crack cocaine.  It would seem to me that

25   the discussion that we're having might require that

1    finding before you got into the question of the weight.

2              MR. CHAMBERS:  I hadn't even thought of that.

3    You're right.  Usually we just address the weight issue is

4    what we address.

5              THE COURT:  Right.  All right.  Well --

6              MR. PETRO:  If I may, I just want to reiterate

7    this.  Apprendi requires that all elements of the offense

8    be alleged in the indictment and proven beyond a

9    reasonable doubt.  An element of the offense is anything

10   that changes the statutory maximum of the crime.  In this

11   particular case, they're asking for 10 years to life for

12   crack cocaine.  The only thing that makes it zero to 20 --

13   from zero to 20 to 10 to life is crack cocaine.  It's an

14   element of the offense and it would have to be defined and

15   it would have to be submitted to the jury.

16             THE COURT:  Well, I don't think there's any

17   disagreement here that this would have to be submitted to

18   the jury, but what if -- but if I understand what he's

19   saying, he's saying let them first decide whether the

20   person engaged in distribution of this substance, guilty

21   or not guilty.  If you find that the person is guilty,

22   since you're contesting the issue of whether it's crack

23   cocaine or not, then they would go on to determine the

24   next question, was it powder cocaine or crack cocaine.

25   And if you find that it's crack cocaine, then you would go

1  on to consider the weight.

2          Now as I understand it, what you're saying is

3  because the definition of crack cocaine -- because of the

4  fact that it's not properly or adequately defined in the

5  statute and, consequently, it's vague, that the jury could

6  not properly address that second question, not whether

7  there was a distribution but whether it was powder cocaine

8  as opposed to crack cocaine.

9          MR. PETRO:  I agree, Judge.  I agree with that.

10          THE COURT:  I think that is mechanically how it

11  would come out.  Okay.  So in that scenario then -- and I

12  agree with you technically in that sense perhaps we're

13  talking about sentencing, but the jury still has to then

14  make that determination.  In this case if it goes to

15  trial, they're going to have to answer that question, is

16  this powder cocaine or crack cocaine.

17          And I need you to respond to the specific

18  contention that leaving it to this subjective

19  determination of testimony, familiar with the drug,

20  including those who sell or use crack, since they are the

21  real experts, that that does not give rise to a

22  constitutionally invalid --

23          MR. CHAMBERS:  Your Honor, it doesn't give rise

24  to a constitutionally invalid standard or definition

25  because -- let me step back just a little bit.  The

 1  Seventh Circuit says the statute doesn't have a definition

 2  in there, so we're going to go over to the guidelines and

 3  pull their definition from the guidelines.  Now with

 4  respect to the definition from the guidelines, we have a

 5  definition.  The definition --

 6           THE COURT:  Let me interrupt just a moment.  I

 7  mean, there are some people on the Supreme Court, as I

 8  understand it, Justice Scalia for example, who might say

 9  unless the statute itself -- does the statute incorporate

10  the guidelines by reference?  If it doesn't, then it seems

11  to me Scalia at least might argue that "Well, gee, if

12  that's what they wanted to do, fine, but they either did

13  it or they didn't and we can't go somewhere else."  It

14  would seem to me it makes -- it has no more validity to

15  say we can go to the sentencing guidelines and see how

16  that defines it than it would for -- as Justice Scalia

17  often says, you can't go to the legislative history and

18  tell us what this means.  This statute either does it or

19  it doesn't.

20           MR. CHAMBERS:  Well, I believe though the

21  Seventh Circuit has said that's what we are going to do.

22  That's where we are going to go to get our definition.  I

23  can't recite all of the analysis right now for why they go

24  over to the guidelines, but I think it basically is their

25  interpretation of what the drafters of the statute

1:06-cr-10033-MMM-JAG    # 180    Page 25 of 31          25

1      intended.

2                  THE COURT:  Well, in the Anderson case, for

3      example, how did this come up in the Anderson case?

4                  MR. CHAMBERS:  Your Honor, I will have to review

5      the Anderson case to respond.  I can't --

6                  THE COURT:  Again, I should have brought these

7      cases with me.  When is this case set for trial?

8                  MR. CHAMBERS:  The 12th.

9                  THE COURT:  The 12th of February?

10                 MR. CHAMBERS:  Yes.  Well, I think that's the

11     date being proposed.

12                 THE COURT:  Is there at least an agreement on

13     that, that if it is going to go it will be tried on that

14     day?  Is that correct?

15                 MR. CHAMBERS:  That's fine with the Government,

16     Your Honor.

17                 THE COURT:  Is there any defense lawyer that

18     disagrees with that?

19                 MR. PETRO:  I have no objection to that.

20                 MR. LOEFFEL:  No, Your Honor.

21                 THE COURT:  I think maybe I want to look into

22     this a little further.  I think I want to have a better

23     understanding than I presently have about just exactly

24     what context the Seventh Circuit has made these findings

25     in.  It may well be, which is the thought I had when I

1    came out here today, that since the Seventh Circuit has

2    said, like in the Anderson case, well, here's the

3    situation we have, the question is what is it, how do you

4    prove it, and if that's the controlling rule then

5    obviously I'll follow it.

6         What concerns me a little bit though is if we

7    don't have a definition of it that can be tested against

8    some objective standard, then there's a lot of potential

9    for mischief and part of that mischief might be vagueness.

10        All right.  Well, let me say, first of all, that

11   if either side has any additional authority that you want

12   me to consider on this point, I would like you to have

13   that in my hands -- I'm not looking for a brief.  I just

14   want the citation to cases.  The end of business a week

15   from tomorrow, okay?

16        Then the other thing is we need a time and place

17   for me to announce this.  I guess we've already had the

18   argument, so perhaps if I decide to deny the motion to

19   dismiss I can do that by docket entry and we can simply

20   make a record the next time that we're together.  On the

21   other hand, if I do grant the motion to dismiss, then of

22   course I'll have to enter a written opinion and we would

23   have to deal with that separately.  But is that method of

24   dealing with this agreeable to both sides?

25             MR. PETRO:  Yes, Judge.

1          THE COURT:  Okay.  Are there any other motions

2    out there?  Concerning the trial date, as I understand it,

3    counsel agrees that some additional time is necessary to

4    adequately prepare for trial.  Consequently, it's in the

5    interests of justice to continue the case to a trial date

6    of February 12.  The Court finds for the same reasons that

7    the period of time between today and February 12 is

8    excludable time for purposes of the Speedy Trial Act.  Any

9    objections to those findings?

10          MR. CHAMBERS:  None from the Government, Your

11   Honor.

12          MR. LONERGAN:  No, Your Honor.

13          MR. FLANAGAN:  No.

14          MR. PETRO:  No, Judge.

15          MR. LOEFFEL:  No, Your Honor.

16          THE COURT:  One other thing.  I'm not telling

17   you that you can't -- you can send something in addition

18   to the cases, but in no event will any brief be longer

19   than ten pages.  Just very succinctly, if you want to

20   comment on some case, fine, but there's no reason to cut

21   down a tree over this.

22          Okay.  Then what else?  There aren't any issues

23   of discovery left?  I would expect if it does go to trial

24   that you would exchange witness lists 14 days ahead of

25   time.  Also, if it goes to trial, I would expect that you

1    would explore any possible stipulations, cut down on any

2    witnesses where the matter under discussion is not really

3    in dispute.

4         Connie will give each of you before you leave

5    here today a copy of the two-page questionnaire that our

6    jurors fill out before they come in.  If you have

7    additional questions you want me to ask, I want you to

8    have those in my hand no later than the end of business

9    the Wednesday before the 12th.  That's February 7.  You

10   can fax those to me at 309-671-7375.

11        Also, the morning of trial I want from you an

12   up-to-date joint witness list that contains the name of

13   each potential witness one time so I can read that to the

14   jury.

15        If it's a new jury panel -- wait a minute.  I

16   want you here at 8:45 that morning and we'll consider what

17   questions to ask the jury.  If there are any other loose

18   ends, we'll deal with those.  If the case does go to

19   trial, the typical trial days are 9:00 to 5:00.

20        In terms of jury selection, if it's a new jury,

21   we would probably start about 9:30.  If it's an old jury,

22   we would probably be able to start a few minutes before

23   that.  The jury will be sworn.  They will be told what the

24   case is, how many days it's expected to last.  And what is

25   your estimate on that?

1          MR. CHAMBERS:  Four days, Your Honor.

2          THE COURT:  I would introduce everyone at

3  counsel tables.  I would read the witness list.  We would

4  call 12 jurors up front.  I would go through all the

5  questions with them.  You would have the juror

6  questionnaires in a three-ring binder on your desks that

7  morning.  I would go over my introductory stuff, your

8  questions, my questions.  We would go over their

9  questionnaires.  If there's a need to excuse someone, we

10  would do that.  At the end of the process, in round one

11  the Government would indicate its strikes on a piece of

12  paper, give those to defense counsel and you would add any

13  additional strikes you have.  The Government has six

14  strikes.  The defense has ten.  You can talk it over among

15  yourselves and decide whether you want to exercise those

16  jointly or separately.

17          In any event, I would read the persons excused,

18  then fill in the blanks and go through the same process in

19  round two except in round two the defense would go first

20  with your strikes and then hand those to the Government.

21  We'll go back and forth until we have 12 and then we would

22  call up -- I would suggest we call up two more -- or four

23  more jurors and go through the same process with them.  At

24  the end of that the Government would strike one, the

25  defense would strike one.  The other two jurors would be

1    the alternates.  There's no back-striking.  If you pass

2    over a juror in round one, for example, you can't go back

3    and strike them in round two.  Any questions about jury

4    selection?

5            MR. PETRO:  I'm sorry, Judge.  They're seated in

6    panels of 12?

7            THE COURT:  I'm sorry?

8            MR. PETRO:  Did you say they're seated in panels

9    of 12?

10           THE COURT:  We do all 12 at one time.  Instead

11   of like a panel of 4, whatever, we'll do it all at once.

12           MR. PETRO:  Thank you, Judge.

13           THE COURT:  If there are any peremptories left

14   over at the end of the selection of 12, they do not carry

15   over to the alternates.

16           Anything else?  Okay.  So of course if I grant

17   the motion to dismiss, then we'll be setting up another

18   hearing anyway and I will have to submit something in

19   writing and then the Government can decide whether to

20   appeal it or not.  But for right now if you're going to

21   give me something else, get it to me no later than a week

22   from tomorrow.

23

24                    * * * HEARING CONCLUDED * * *

25

1          **REPORTER'S CERTIFICATE**

2

3          I, Karen S. Hanna, certify that the

4    foregoing transcript constitutes a true and accurate

5    transcript of the original shorthand notes of the

6    proceedings had at the time and place aforesaid

7    before the HONORABLE MICHAEL M. MIHM, U.S. District

8    Judge.

9

10                              s/ Karen S. Hanna
                                Karen S. Hanna, C.S.R.
11                              License #084-001760

12

13

14

15

16

17

18

19

20

21

22

23

24

25