E-FILED[1]

Monday, 17 March, 2008  03:36:32 PM

Clerk, U.S. District Court, ILCD

1          THE UNITED STATES DISTRICT COURT
          FOR THE CENTRAL DISTRICT OF ILLINOIS
2

3

4

5
   UNITED STATES OF AMERICA,          )
6                                     )
                        Plaintiff,    ) Criminal No.
7                                     ) 06-10033
            vs.                       ) Peoria, Illinois
8                                     )
   ADRIEN BENNETT, TERRY BENNETT      )
9  and NEASHON WASHINGTON,            )
                                      )
10                      Defendants.    )

11

12

13

14              JURY TRIAL EXCERPT
                FEBRUARY 21, 2007
15

16

17                    BEFORE:

18          HONORABLE MICHAEL M. MIHM
            United States District Judge
19

20

21

22

23

24

25

```
 1                        APPEARANCES:

 2                   K. TATE CHAMBERS, ESQ.
                   BRADLEY W. MURPHY, ESQ.
 3              Assistant United States Attorneys
                  200 Fulton Street, Suite 400
 4               Peoria Island, Illinois  61602
              (Appeared on Behalf of the Government)
 5

 6                   JOHN P. LONERGAN, ESQ.
              411 Hamilton Boulevard, Suite 1708
 7                    Peoria, Illinois  61602
              (Appeared on Behalf of Adrein Bennett)
 8

 9                   MICHAEL J. PETRO, ESQ.
                   53 W. Jackson, Suite 1264
10                  Chicago, Illinois  60604
              (Appeared on Behalf of Terry Bennett)
11

12                 WILLIAM C. LOEFFEL, ESQ.
                   139 E. Washington Street
13                 East Peoria, Illinois  61611
            (Appeared on Behalf of Neashon Washington)
14

15

16

17

18

19

20

21

22

23
                     Karen S. Hanna, C.S.R.
24                  U.S. District Court Reporter
                   Central District of Illinois
25    Proceedings recorded by mechanical stenography, transcript
      produced by computer
```

```
 1              (Whereupon the jury resumed their deliberations

 2                          at 9:00 a.m.)

 3         (Following held out of the presence of the jury

 4                          at 9:30 a.m.)

 5              THE COURT:  We have received a note from the

 6    jury that says:  "In the finding of Count 1, should there

 7    be a sheet to determine the total weight for each

 8    individual defendant or one sheet for the total for the

 9    group?"  Why is Adrien Bennett the only defendant that we

10    have listed to prove the quantity of drugs involved?"

11              I have no idea how this happened.  This is

12    completely my fault.  But the papers that they had in

13    their folder for Count 1 only included the sheet

14    concerning weight for Adrien even though we had approved

15    similar sheets for Neashon Washington and Terry Bennett.

16              So I'm suggesting that my response to them would

17    read:  "Regarding Count 1, I have added the two sheets

18    that should have been in the folder to begin with.  Thank

19    you for bringing it to my attention.  My mistake."  Then I

20    have the two sheets here that I believe should be added.

21    Does anyone object to that response?

22              MR. LOEFFEL:  No objection, Your Honor.

23              MR. LONERGAN:  No, Judge.

24              MR. PETRO:  None, sir.

25              THE COURT:  So would you staple those sheets
```

1   together, please?  Then I guess that's it.  We'll be in

2   recess.

3                        * * * * * * * * * *

4              (Following held out of the presence of the jury

5                        at 1:30 p.m.)

6              THE COURT:  Counsel, you have a copy of this

7   question on your tables.  It reads:  "Could we get the

8   statement and the testimony transcript of Douglas Sherman,

9   please?"

10             I don't recall whether his statement was

11  actually admitted in evidence.  I don't think it was.

12             MR. LOEFFEL:  It was not, Your Honor.

13             THE COURT:  And there is no transcript, so I

14  would suggest that the proper response would be that the

15  statement is not in evidence and the transcript does not

16  exist so you should call upon your collective memory as to

17  what his testimony was.  Is there any belief that such a

18  response would not be appropriate?

19             MR. PETRO:  I'm just curious.  The statement

20  does not exist or the statement --

21             THE COURT:  No.  I said the statement is not in

22  evidence and the transcript does not exist.  The

23  transcript of his testimony does not exist.

24             MR. PETRO:  Can we just say these documents are

25  unavailable and leave it at that, Judge?

1          THE COURT:  No, I'm not going to say that

2     concerning the statement.  I might say that about the

3     transcript.  The fact is that his statement is not in

4     evidence.  That's the proper answer for that I believe.

5     If you want me to say that the transcript of his testimony

6     is not available, I would be happy to say that.  Any other

7     thoughts?

8          MR. LONERGAN:  I have no problem with the

9     Court's suggested response, Judge, particularly about

10    relying on their collective memory.  That's appropriate.

11         MR. LOEFFEL:  No problem with the Court's

12    suggestion.

13         THE COURT:  Okay.  The response reads:  "Douglas

14    Sherman's statement is not in evidence.  There is no

15    transcript of his testimony available.  You should call

16    upon your collective memory as to what his testimony was."

17    Any additional record?  So, Mr. Petro, do you want me to

18    show this over your objection?

19         MR. PETRO:  No, sir.

20         THE COURT:  Okay.  All right.  Thank you.  I

21    would ask counsel to stay in the area for 10 or 15 minutes

22    because once they get this answer, that might cause them

23    to move in one direction or another fairly quickly.  After

24    that, you can go back to the telephone.

25                     * * * * * * * * *

1                (Following held out of the presence of the jury

2                      at 2:30 p.m.)

3                THE COURT:  I have received a note from the jury

4      that says:  "Unfortunately we cannot come to an agreement

5      on any of the counts that include Terry Bennett, 1, 4 and

6      11.  We also cannot come to any agreement to the amount of

7      controlled substance that Adrien Bennett and Neashon

8      Washington are responsible for."

9                So the question is how to do we respond to this.

10     The jury has been deliberating -- they got the case about

11     12:30 yesterday, so they had about 5 hours yesterday and

12     then they came at 9:00 o'clock today, so they had 5 1/2

13     hours, so they've been deliberating for about 10 1/2

14     hours.

15                It seems to me the first question is what steps,

16     if any, do we take before we declare a mistrial.  And

17     that's just one of the questions.  It has been a common

18     practice of mine over the years in cases where a jury

19     sends a note indicating that they have been unable to

20     reach a unanimous verdict to bring them down and read to

21     them again the Allen instruction, which is number 2, the

22     second instruction that they were read that tells them

23     that they should make every effort, reasonable effort, to

24     reach a verdict.  And it may well be that that's what we

25     should do here as the first step.  If there are other

1    thoughts on this, I would be happy to consider those.

2            We're really dealing with -- in addition to

3    that, we're dealing with two different situations here as

4    I understand it.  As to the defendant Terry Bennett, they

5    apparently can't agree on anything.  It sounds like as to

6    the other two defendants, they've reached -- it's always

7    dangerous to speculate, but it looks like maybe a guilty

8    verdict on some of the counts as to Adrien Bennett and

9    Neashon Washington, but they can't agree on the weight.  I

10   say that because the instructions tell them they are only

11   to go to that question if there has been a finding of

12   guilty.  So I would be very happy to hear any input any of

13   you have on this matter.  Let's start with Mr. Murphy.

14           MR. MURPHY:  Judge, I have conferred with

15   Mr. Chambers even before the Court suggested it.  We had

16   decided to take the posture to ask the Court to again

17   instruct them on the Allen charge and ask them to please

18   continue to deliberate with an eye towards reaching

19   unanimous verdicts, send them back up.  That is still our

20   position, Judge.

21           THE COURT:  Okay.  How about defense counsel?

22   Mr. Loeffel?

23           MR. LOEFFEL:  We agree with the Allen

24   instruction, Your Honor.  We would propose that perhaps

25   what the jury is hung up over would be the testimony of

1   Douglas Sherman which we had objected to in the first

2   place.  We would suggest perhaps they could be instructed

3   to disregard his testimony with respect to weight.

4           THE COURT:  Well, there's no way in the world --

5   I have not ruled in this case that that was appropriate.

6   This is during jury deliberations.  It's certainly not a

7   time to consider a matter like that for the first time, so

8   I'm not willing to do that.  Mr. Lonergan?

9           MR. LONERGAN:  Judge, I have no problem with the

10  Court giving the Allen instruction again.  That seems

11  appropriate under the circumstances.

12          THE COURT:  Mr. Petro?

13          MR. PETRO:  I concur, Judge.  I concur.

14          THE COURT:  All right.  So what I plan to do

15  here is bring the jury down and when they come down,

16  simply tell them that I have received their note and I

17  want to re-read one of the instructions to them and do

18  that and then simply say, "Now I want you to at this time

19  go back to the jury room and continue your deliberations."

20          It is extremely crucial, since they are being

21  brought down here during deliberation, that nothing happen

22  while they are in this courtroom to attempt to influence

23  them in any way, so I need to give very careful

24  instructions, orders, whatever you want to call it, to

25  anyone who is in the room that you must simply not say

1    anything, not make any facial expressions or do anything

2    while they are down here.  Bring the jury down, please.

3        (Following held in the presence of the jury)

4        THE COURT:  I have received your note and what I

5    want to do at this point is read to you an instruction

6    that I read to you to begin with.  And you also have a

7    copy of them in the jury room, but I want to read it to

8    you again.

9        The verdict must represent the considered

10    judgment of each juror.  Your verdict, whether it be

11    guilty or not guilty, must be unanimous.  You should make

12    every reasonable effort to reach a verdict.  In doing so,

13    you should consult with one another, express your own

14    views and listen to the opinions of your fellow jurors.

15    Discuss your differences with an open mind.  Do not

16    hesitate to re-examine your own views and change your

17    opinion if you come to believe it is wrong, but you should

18    not surrender your honest beliefs about the weight or

19    effect of evidence solely because of the opinions of your

20    fellow jurors or for the purpose of returning a unanimous

21    verdict.  The twelve of you should give fair and equal

22    consideration to all the evidence and deliberate with the

23    goal of reaching an agreement which is consistent with the

24    individual judgment of each juror.  You are impartial

25    judges of the facts.  Your sole interest is to determine

 1   whether the Government has proved its case beyond a

 2   reasonable doubt.

 3             Now I want you to go back to the jury room and

 4   continue your deliberations.

 5                       (Jury excused)

 6        (Following held outside the presence of the jury)

 7             THE COURT:  Obviously nobody knows what's going

 8   to happen now I'm sure, including the jury, so I'm not

 9   going to engage in any advisory opinions.  But just

10   because of what this note says, I want you to be thinking

11   of certain things if they come back with a another note

12   that says they're hopelessly deadlocked.  In Terry

13   Bennett's situation, I think that's dealt with by -- I

14   would typically bring the jury back down and ask each of

15   them if there is any hope of reaching a unanimous verdict.

16   And then if they each say no, then at that point I would

17   declare a mistrial.

18             It's a little more complicated concerning Adrien

19   Bennett and Neashon Washington.  I have never had this

20   situation before, but I'm mentioning it now so you have

21   some time to think about it.  That is if they have reached

22   some verdicts of guilt or innocence but are unable to

23   reach a unanimous decision as to the weight.  They don't

24   make any mention in here of the drugs, so it's always

25   dangerous to assume anything, but it may mean that that

1    decision has been made.  But in terms of the weight, if

2    they are unable to reach a decision regarding weight and

3    when they come down they tell us that they are hopelessly

4    deadlocked, then what is the effect of that?  Is it a

5    mistrial in the traditional sense of the word or is it

6    somehow something other than that, a finding of guilty

7    without weight?

8            I'm not even suggesting we have to answer that

9    question to get us through the day, but it's something

10   that in reading this note definitely comes into my mind.

11   So why don't you stick around for 10 or 15 minutes.  Maybe

12   we'll see some movement.

13                    * * * * * * * * * *

14            (Following held out of the presence of the jury

15                    at 4:35 p.m.)

16            THE COURT:  We have received another note saying

17   that:  "At this time we want you to know we have one jury

18   member since yesterday that at many times says that he or

19   she will not change his or her verdict no matter what

20   arguments are provided.  We feel we have made every

21   reasonable effort to reach a verdict by letting each juror

22   member several times provide his or her own opinion of the

23   evidence and information.  Also, emotions in the jury room

24   are getting heated.  We need you to know there has also

25   been tears involved.  At this time we are all

1  uncomfortable and stressed at this time."

2        So my suggestion -- with one reservation, my

3  suggestion is that we bring the jurors down and we ask

4  each of the jurors if they feel there is any hope of

5  reaching a unanimous verdict on any of the verdicts.  I'm

6  guessing that the answer is going to be they are going to

7  say no, there's no hope.  If that happens, then we have a

8  mistrial.

9        What is still hanging out there, however, is at

10  least the possibility, based on what they've said in the

11  first note, that as to two of the defendants, Adrien

12  Bennett and Neashon Washington, there was at least a

13  suggestion that perhaps they had found them guilty of some

14  counts without being able to agree on the weight.

15        And to tell you candidly, I've never had this

16  situation come up before, but the question that it raises

17  is this.  It seems to me that at least arguably if they

18  have reached a decision on guilt or innocence as to any

19  person, as to any count, even if they can't agree at all

20  on weight, that perhaps those verdicts should be received.

21  But I have no real confidence in that.  I have never had

22  this situation come up before.

23        MR. MURPHY:  Your Honor, I don't think this is

24  any different than when they can't reach a decision on a

25  certain count, on another count.  You take the verdict on

1    the counts they can reach the decision on and you find

2    them hung on the counts that they can't.  The practical

3    effect -- let's say, for example, from reading that one

4    note that what we have here is they have found Adrien and

5    Neashon guilty, but they can't come up with the weight or

6    even possibly the substance.  I think then we would just

7    go to the default position as far as today because the

8    weight is -- and I'm not talking about the date of

9    sentencing.  But for today's purposes there would be no

10   enhancement, that wouldn't apply, because that's what the

11   drugs and weight are all about is the enhancements.

12            THE COURT:  I understand that.

13            MR. MURPHY:  I think we take whatever verdicts

14   they have reached.  I think we take those.  Whatever they

15   can't reach, we hang those and make a decision what we do

16   with them after this.

17            THE COURT:  Does anyone disagree with that?

18            MR. PETRO:  Judge, I don't think we have any

19   disagreement with the Government's position and the

20   Court's position at this time.  I don't know if you have

21   adopted the position.  I shouldn't say that.

22            THE COURT:  All right.  Do you all agree on that

23   or what?

24            MR. LONERGAN:  I agree with the theory of it,

25   Judge.  However, until the jury gets in here, we really

1    don't know what we're dealing with as to those particular

2    issues.  So I think once we have an opportunity to find

3    out what's going on, maybe we can confer again and as

4    to -- looks like Count 1 seems to be the biggest issue and

5    we don't -- we don't know what they're hung up on.  Could

6    be a substance or weight issue near as I can tell.

7                MR. LOEFFEL:  I concur with Mr. Lonergan.

8                THE COURT:  All right.  Let me take a minute

9    here.  I think at this point actually it could be a

10   mistake to just bring them down.  It seems to me that

11   before we bring them down, we need to have them answer

12   three questions for us yes or no.  Those questions are --

13   and this is what I have worded.  I'm certainly open to any

14   suggestion concerning the wording.

15               "Please answer yes or no to this question.  1.

16   Have you reached a unanimous verdict as to any defendant

17   as to any count?"  Then we would actually put "yes" or

18   "no".

19               2.  "If yes as to question one, have you reached

20   unanimous verdicts on any counts as to the drug involved?

21   'Yes' or 'no'."

22               Then Count 3 or question 3.  "If yes as to

23   question 1, have you reached unanimous agreement as to the

24   weight as to any count?"

25               MR. MURPHY:  The only suggestion I would have

1   is, question one, that you make it more explicit, that

2   you're asking about guilty/not guilty, instead of --

3                THE COURT:  Okay.  Anybody have any thoughts on

4   that?  The reason I'm suggesting we do this is that then

5   we would know before we bring them down what to expect.  I

6   don't want to engage in a -- I don't -- it's always

7   dangerous to engage in a conversation with a deliberating

8   jury.  That's why I think if they say no to all of this,

9   then we bring them down and I simply ask them if there's

10  any hope of reaching a unanimous agreement.  If they say

11  yes, to any of those -- if they say yes to number one,

12  then I think what we would want to do is take those

13  verdicts, ask them if there is any hope of unanimous

14  agreement on the remaining issues.  And then if they say

15  no, send them home.  Then we sit down and figure out what

16  we've got.

17               MR. MURPHY:  I agree.

18               MR. LONERGAN:  I think that's appropriate,

19  Judge.  I agree.

20               MR. LOEFFEL:  I would agree.

21               MR. PETRO:  What does the first one say again?

22               THE COURT:  I'm going to rewrite it, but it

23  would say:  "Please answer yes or no to this question.

24  Have you reached a unanimous agreement as to any

25  guilty/not guilty verdict concerning as to any defendant

1    as to any count?"  Let me write that out.  That sounds a

2    little awkward.

3              It says:  "Please answer yes or no to this

4    question.  Have you reached a unanimous agreement as to

5    any guilty/not guilty verdict as to any defendant as to

6    any count?"  That's question number one.

7              MR. PETRO:  If I may, can you say that one more

8    time please, sir?

9              THE COURT:  "Please answer yes or no to this

10   question.  Have you reached a unanimous agreement as to

11   any guilty/not guilty verdict as to any defendant as to

12   any count?"

13             Number two says:  "If yes as to question

14   number 1, have you reached unanimous verdicts on any

15   counts as to the drug involved?"  That's question

16   number 2.

17             Three says:  "If yes as to question number 1,

18   have you reached unanimous agreement as to the weight as

19   to any count?  'Yes' or 'no'."

20             So I'll read these all together at one time.

21   "Please answer yes or no to this question.  Have you

22   reached unanimous agreement as to any guilty/not guilty

23   verdict as to any defendant as to any count?  'Yes' or

24   'no'."

25             2.  "If yes as to question number 1, have you

1  reached unanimous verdicts on any counts as to the drug

2  involved?  'Yes' or 'no'."

3          3.  "If yes as to question number 1, have you

4  reached unanimous agreement as to the weight as to any

5  count?  'Yes' or 'no'."  Mr. Lonergan?

6          MR. LONERGAN:  Your Honor, just for consistency

7  sake, I didn't hear you say as to Count 2, unanimous

8  agreement as to a verdict as to each --

9          THE COURT:  I'm sorry.

10         MR. LONERGAN:  In the second instruction or

11 second question you wrote, you used the words "Have you

12 reached unanimous agreement as to guilt or innocence."  I

13 think in the second ones I didn't hear the words

14 "unanimous agreement".

15         THE COURT:  It says:  "Have you reached

16 unanimous verdicts on any counts."  I think that's --

17 okay.  I'll have her copy what I've written down and you

18 can take a look at it.  I would point out that 2 and 3

19 modify 1, so if the answer is no to 1, then of course they

20 never get to the other questions.  Is there any objection

21 to this?

22         MR. MURPHY:  No objection, Your Honor.

23         MR. LONERGAN:  Judge, I'm --

24         THE COURT:  I don't want to take too long here.

25         MR. LONERGAN:  Judge, again, my only statement I

1    guess --

2            THE COURT:  I can't hear you.

3            MR. LONERGAN:  This is the same thing I just

4    said a minute ago, that you used the words "unanimous

5    agreement" in questions 1 and 3, but you use "unanimous

6    verdict" without the word "agreement" as to question 2.

7    It's a small thing.

8            THE COURT:  All right.  That's fine.  All right.

9    So 2 says:  "Have you reached unanimous agreement on any

10    counts as to the drug involved?"

11            MR. LONERGAN:  Yes, sir.

12            THE COURT:  All right.  Is it all right if I

13    don't redo this whole thing?  I think -- the word

14    "agreement", I think, is clearly readable even with my

15    handwriting.  All right.  So that's what I'm going to do.

16    And I wrote at the bottom of it:  "Please record your

17    answer or answers on this sheet of paper."

18            Okay.  We might as well -- I'll be back in a

19    minute, but I would like everybody to stay here.  We'll be

20    in recess.  Stay here.

21                    * * * * * * * * * *

22        (Following held out of the presence of the jury

23                    at 5:15 p.m.)

24            THE COURT:  The answer to question one is "yes".

25    The answer to question two is "yes".  The answer to

1  question three is "yes".  And then below that they gave

2  more information than I requested.  They say:  "Count 1,

3  two of the three defendants unanimous.  Substance,

4  unanimous.  Weight, not unanimous.  Counts 2, 3, 5, 6, 7,

5  8, 9, 10, 12, 13, 14, 15, 16, 17, 18, defendants,

6  unanimous.  Substance, unanimous.  Count 18, weight,

7  unanimous.  Count 4 and 11, one of the two defendants,

8  unanimous.  Substance, unanimous."

9           All right.  So what I'm going to do is send the

10  clerk up, tell them to come down with all of the folders,

11  all of the verdict forms, and I will then confirm that

12  they have reached unanimous agreement on some verdicts but

13  not others.  I will then look at the verdict forms and

14  confirm that they are unanimous, which some of them are,

15  and as to those I will announce those verdicts.  And then

16  at the end of that announcement of the verdicts, then

17  I'll -- each juror will be asked, "Are these your

18  verdicts?"  Then I will go on to say:  "As to the other

19  counts, as to the other items on which you have not

20  reached unanimous verdict, is there any hope of reaching

21  unanimous verdict?"  Then each will be polled as to that.

22  Okay.  Anybody object to that process?

23           MR. MURPHY:  No objection.

24           MR. LONERGAN:  No.

25           MR. PETRO:  No.

1          MR. LOEFFEL:  No.

2          THE COURT:  Again, let me underscore this as

3     strongly as possible.  There cannot be any reaction to any

4     of these verdicts period, please.  Okay.  Bring the jury

5     down.

6          (Following held in the presence of the jury)

7          THE COURT:  Who is the foreperson?  Do I

8     understand correctly that you have reached unanimous

9     agreement on some of the verdicts and you have not reached

10    unanimous agreement on some of the others?  Is that

11    correct?

12         THE FOREPERSON:  That's correct.

13         THE COURT:  Then you have all of the forms with

14    you?  Okay.  And can I assume that if you did reach

15    unanimous agreement as to a particular matter, that you

16    did fill in and sign the verdict forms?

17         THE FOREPERSON:  We did.

18         THE COURT:  I will ask you to give the files to

19    the clerk.

20         THE FOREPERSON:  The three counts we're not

21    completely settled on are separated, turned sideways.  The

22    bottom are settled.

23         THE COURT:  Okay.  Thank you.  I think the best

24    way for me to do this is to just do it count by count.  I

25    want you to listen carefully as I do this because when I

 1    go through -- when I finish going through all these

 2    matters as to which you have reached a unanimous verdict,

 3    at the end of that process then the clerk is going to ask

 4    each of you the following question:  "Are these your

 5    verdicts?"

 6          Count 1.  We, the jury, find the defendant,

 7    Adrien Bennett, guilty of the charge of conspiracy.  We,

 8    the jury, find the defendant, Neashon Washington, guilty

 9    of the charge of conspiracy.  There is no unanimous

10    agreement as to Terry Bennett on the conspiracy charge.

11          The next question about the type of drug:  We,

12    the jury, find the conspiracy charged in Count 1 was to

13    distribute cocaine base crack.  Then as to the weight,

14    there is no agreement on the conspiracy count.

15          Count 2.  We, the jury, find the defendant,

16    Adrien Bennett, guilty of the charge of distribution of

17    cocaine.  We, the jury, find the defendant, Neashon

18    Washington, guilty of the charge of distribution of

19    cocaine.

20          Count 3.  We, the jury, find the defendant,

21    Adrien Bennett, guilty of the charge of distribution of

22    controlled substance as charged in Count 3.  We, the jury,

23    find the defendant, Neashon Washington, guilty of the

24    charge of distribution of controlled substance.  Then the

25    third sheet is:  We, the jury, find that the drug

1   distributed in Count 3 was cocaine base crack.

2              Count 4.  We, the jury, find the defendant,

3   Adrien Bennett, guilty of the charge of distribution of a

4   controlled substance as alleged in Count 4.  As to Terry

5   Bennett, there is no unanimous agreement.  As to the type

6   of drug:  We, the jury, find that the drug distributed in

7   Count 4 was cocaine base crack.

8              Count 5.  We, the jury, find the defendant,

9   Adrien Bennett, guilty of the charge of distribution of

10  controlled substance.  We, the jury, find the defendant,

11  Neashon Washington, guilty of the charge of distribution

12  of a controlled substance.  We, the jury, find that the

13  drug distributed in Count 5 was cocaine base crack.

14             Count 6.  We, the jury, find the defendant,

15  Adrien Bennett, guilty of the charge of distribution of

16  controlled substance.  We, the jury, find the defendant,

17  Neashon Washington, guilty of the charge of distribution

18  of a controlled substance.  We, the jury, find that the

19  drug distributed in Count 6 was cocaine base crack.

20             We, the jury, find the defendant, Adrien

21  Bennett, guilty of the charge of distribution of a

22  controlled substance as alleged in Count 7 of the

23  indictment.  We, the jury, find the defendant, Neashon

24  Washington, guilty of the charge of distribution of a

25  controlled substance as alleged in Count 7.  We, the jury,

1    find the drug distributed in Count 7 was cocaine base

2    crack.

3              As to Count 8:  We, the jury, find the

4    defendant, Adrien Bennett, guilty of the charge of

5    distribution of a controlled substance.  We, the jury,

6    find that the drug distributed in Count 8 was cocaine base

7    crack.

8              As to Count 9:  We, the jury, find the

9    defendant, Adrien Bennett, guilty of the charge of

10   distribution of a controlled substance.  We, the jury,

11   find that the drug distributed in Count 9 was cocaine base

12   crack.

13             Count 10.  We, the jury, find the defendant,

14   Adrien Bennett, guilty of the charge of distribution of a

15   controlled substance.  We, the jury, find that the drug

16   distributed in Count 10 was cocaine base crack.

17             As to Count 12 -- I'm sorry.  As to Count 11:

18   We, the jury, find the defendant, Adrien Bennett, guilty

19   of the charge of distribution of a controlled substance.

20   As to Terry Bennett, there is no unanimous agreement as to

21   the verdict.  We, the jury, find that the drug distributed

22   in Count 11 was cocaine base crack.

23             Count 12.  We, the jury, find the defendant,

24   Adrien Bennett, guilty of the charge of distribution of a

25   controlled substance.  We, the jury, find that the drug

1   distributed in Count 12 was cocaine base crack.

2           As to Count 13:  We, the jury, find the

3   defendant, Adrien Bennett, guilty of the charge of

4   distribution of a controlled substance.  We, the jury,

5   find that the drug distributed in Count 13 was cocaine

6   base crack.

7           As to Count 14:  We, the jury, find the

8   defendant, Adrien Bennett, guilty of the charge of

9   distribution of a controlled substance.  We find -- we,

10  the jury, find the defendant, Neashon Washington, guilty

11  of the charge of distribution of a controlled substance.

12  We, the jury, find that the drug distributed in Count 14

13  was cocaine base crack.

14          As to Count 15:  We, the jury, find the

15  defendant, Adrien Bennett, guilty of the charge of

16  distribution of a controlled substance.  We, the jury,

17  find that the drug distributed in Count 15 was cocaine

18  base crack.

19          As to Count 16:  We, the jury, find the

20  defendant, Adrien Bennett, guilty of the charge of

21  distribution of a controlled substance.  We, the jury,

22  find the defendant, Neashon Washington, guilty of the

23  charge of distribution of a controlled substance.  We, the

24  jury, find that the drug distributed in Count 16 was

25  cocaine base crack.

1            As to Count 17:  We, the jury, find the

2    defendant, Adrien Bennett, guilty of the charge of

3    distribution of a controlled substance.  We, the jury,

4    find the defendant, Neashon Washington, guilty of the

5    charge of distribution of a controlled substance.  We, the

6    jury, find that the drug distributed in Count 17 was

7    cocaine base crack.

8            As to Count 18:  We, the jury, find the

9    defendant, Neashon Washington, guilty of the charge of

10   distribution of a controlled substance.  We, the jury,

11   find that the drug distributed in Count 18 was cocaine

12   base crack.  We, the jury, find that the amount of

13   controlled substances involved in Count 18 was 5 grams or

14   more but less than 50 grams.

15            Will the clerk please poll the jurors?

16                    (Jury polled)

17

18            * * * EXCERPT CONCLUDED * * *

19

20

21

22

23

24

25

1                    **REPORTER'S CERTIFICATE**

2

3            I, Karen S. Hanna, certify that the

4    foregoing transcript constitutes a true and accurate

5    transcript of the original shorthand notes of the

6    proceedings had at the time and place aforesaid

7    before the HONORABLE MICHAEL M. MIHM, U.S. District

8    Judge.

9

10                           s/ Karen S. Hanna
                             Karen S. Hanna, C.S.R.
11                           License #084-001760

12

13

14

15

16

17

18

19

20

21

22

23

24

25